[Civ. No. 13852.   First Dist., Div. Two.   Apr. 27, 1949.]

ANITA McNULTY, Appellant, v. HERBERT COPP, as Executor, etc., et al., Respondents.

Leo R. Friedman and Frank J. Fontes for Appellant.

Orrick, Dahlquist, Neff & Herrington, George Herrington, George H. Johnston, Willard S. Johnston, J. J. Lermen and George Devine for Respondents.

DOOLING, J.—Plaintiff and appellant appeals from a judgment denying her relief in a suit to reform a deed to certain real property in St. Francis Wood, San Francisco, hereinafter referred to as the home, annulling a deed to her from her deceased father of the home and a joint tenancy deed to another parcel of real property in San Francisco, hereinafter referred to as the Shipley Street property, quieting cross-complainant's title to the home subject to administration and quieting title to the Shipley Street property in the executor of decedent's will subject to distribution by the probate court.

Henry W. Copp died at the age of 79, January, 1945, survived by four children, Anita Copp McNulty, alias Anita Copp Ahern, plaintiff, cross-defendant and appellant herein; Olive Copp Eldridge, one of defendants, cross-complainant and a respondent; and two other children. By his last will Mr. Copp left his home known as 52 San Leandro Way in St. Francis Wood to respondent Mrs. Eldridge. The residence was on Lot 6 and the adjoining lot appurtenant thereto as a garden was Lot 5 of Block 9 of the subdivision.

A few hours after Mr. Copp's death, appellant recorded a deed from her father dated and purportedly executed September 8, 1933, which deed covered Lot 5 and Lot 4 which was not owned by decedent. It did not cover Lot 6. Appellant asserted ownership of the residence and adjacent lot,

claiming that the deed was intended to cover both, and mistakenly recited Lots 4 and 5 instead of Lots 5 and 6. She brought this suit in equity against the executor and Mrs. Eldridge to reform the deed so as to include the residence and to quiet title thereto.

Mrs. Ahern's original complaint alleged no consideration for this deed. After demurrer was sustained on the ground that equity will not reform a voluntary deed, she amended her complaint to allege that said deed was executed in consideration of her promise to live with and take care of her father. At the trial Mrs. Ahern gave different versions of the alleged agreement, one version being that she was to receive the entire estate to the exclusion of the other children.

Defendants and respondents defended on the grounds of nonexecution of the deed alleging lack of intent to transfer title, fraud, lack of consideration, unclean hands and the statute of limitations. Mrs. Eldridge also filed a cross-complaint charging fraud by Mrs. Ahern and an attorney M, who prepared the deed, in obtaining Mr. Copp's signature to the deed sued on and in the same transaction obtaining his signature to a deed of the Shipley Street property to a third person who in turn executed a deed to appellant and her father as joint tenants. Under this latter deed appellant claimed the Shipley Street property after her father's death as surviving joint tenant. The cross-complaint alleged and the trial court found that this transfer was never intended by Mr. Copp and that both deeds were obtained by fraud. There was evidence that in 1932, at the time of the death of his wife, Mr. Copp, then 68, was healthy and of sound mind, but his vision was greatly impaired and he was practically blind. He perhaps could read ordinary type with the aid of his jeweler's glass although this was disputed.

Appellant moved into her father's home with her young daughter in December, 1932, after her stepmother's death. Mr. Copp had been supporting them, and continued to support them thereafter. No agreement between Mrs. Ahern and her father for the father's care was mentioned to M, the attorney who prepared the deeds in 1933. No agreement was mentioned to Attorney John Lermen in 1939 when the deeds to the Shipley Street property came to light and were challenged by Mr. Copp as fraudulent. There was testimony that in October, 1933, Attorney M advised Mr. Copp of a defect in title to the Shipley Street property which necessitated the execution of certain deeds to correct. It was at this time

that the deeds here involved were signed by Mr. Copp. In an interview with Attorney Lermen, M and Mrs. Ahern stated that the Shipley Street joint tenancy deed was executed because Mr. Copp wanted to save taxes. In this interview M did not tell Lermen of the home property deed because, as he testified, he felt that it was confidential. This deed, was of course, then unrecorded. Numerous wills and codicils executed by Mr. Copp were introduced which consistently showed that the home property was never devised to Mrs. Ahern, but rather to Mrs. Eldridge or to Mrs. Eldridge and her sister. Mr. Lermen testified that Mr. Copp told him about signing the Shipley Street deed, that it was contrary to what he had intended, but he had taken care of the matter by devising the Shipley Street property to Mrs. Ahern in his will. Mrs. Eldridge who lived near her father in St. Francis Wood and usually spent some time each day with him, stated that her father told her that he had learned that Anita's name was on the deed and it was a very serious thing that she had done in obtaining the joint tenancy deed of the Shipley Street property.

The evidence further showed that in 1939 decedent was advised by a real estate agent that the Shipley Street property was held in joint tenancy by appellant and himself and for that reason appellant should join as lessor in a proposed lease of the property, that decedent thereupon became indignant and told many people that he had not intended to create a joint tenancy but had signed the deed to the Shipley Street property under the belief induced by the representations of appellant and attorney M that this was necessary to correct a defect in title. Decedent thereafter executed the several wills leaving the Shipley Street property to appellant, saying that he did not want to make trouble with appellant and his will would cure what had been done without his knowledge. There is conflicting evidence as to declarations made over the years by decedent to various witnesses, some acknowledging and some denying' an intent to transfer title to appellant. The trial court's findings resolved these conflicts against the appellant. The last will of decedent devised the home to respondent Mrs. Eldridge and the Shipley Street property to appellant. It contained a clause that in case of contest the contestant should take nothing and it appears that because of appellant's prosecution of this litigation the claim has been advanced in the probate court that she has forfeited her rights under the will. Other evidence is hereafter referred

to, although much of the evidence favorable to appellant need not be stated because of the settled rule that on appeal we are to consider only the evidence most favorable to the judgment.

█ One of the issues in the case was whether the deeds to the two parcels in question were validly delivered by her father so as to vest title in appellant as joint tenant with her father in the Shipley Street property and in fee simple in the home. On the question of delivery and intent evidence of the subsequent declarations and conduct of the deceased, even if self-serving, was admissible. (*Williams* v. *Kidd,* 170 Cal. 631, 648 et seq. [151 P. 1, Ann.Cas. 1916E 703]; *Donahue* v. *Sweeney,* 171 Cal. 388, 391-392 [153 P. 708]; *De Cou* v. *Howell,* 190 Cal. 741 [214 P. 444]; *Whitlow* v. *Durst,* 20 Cal.2d 523 [127 P.2d 530]; *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154 [168 P.2d 946].) In *De Cou* v. *Howell, supra* at page 750 of 190 Cal. the court said:

"The issue in this class of cases is whether or not the grantor delivered his deed with the intent that it should convey title. In such cases the acts and declarations, in short, the conduct of a deceased grantor, may be given in evidence either in confirmance of delivery or in disproof thereof."

In *Hansen* v. *Bear Film Co., Inc., supra,* 28 Cal.2d at page 174 the court quoted with approval the following from *Whitlow* v. *Durst, supra,* 20 Cal.2d at pages 524-525:

"When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving. Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them."

The evidence of the subsequent declarations and conduct of the decedent Copp was therefore properly admitted by the trial court and was to be weighed by the court in determining whether the decedent delivered the deeds to the two parcels of property with intent to vest title in appellant.

It is true, as pointed out by appellant, that the declarations of decedent were only admissible on the question of intent and delivery and were not evidence of the truth of the matters stated therein by decedent. (*Estate of Snowball,* 157 Cal.

301, 307 [107 P. 598]; *Dinneen* v. *Younger*, 57 Cal.App.2d 200, 205 et seq. [134 P.2d 323].)    Basing her argument upon this latter principle of law appellant insists that there is no substantial evidence to support the findings that the two transactions were the result of fraudulent misrepresentations to the decedent as to the nature of the documents which he executed and the purpose of signing them. There is no direct evidence to contradict the testimony of appellant and the Attorney M that the decedent knowingly and without any deception practiced upon him conveyed to appellant a joint tenancy interest in the Shipley Street property and a fee title in the home; but there is an abundance of circumstantial evidence to support the inference of the trial court that the decedent was induced to sign the two deeds which divested him of his title under the belief fraudulently induced that he was clearing the title to the Shipley Street property.    It is not the law that a finding based solely upon circumstantial evidence cannot stand against direct and positive testimony to the contrary. The true rule is stated in *Gray* v. *Southern Pacific Co.*, 23 Cal.2d 632, 640-641 [145 P.2d 561]:

"In determining the disputed questions of fact presented at the trial of the case it was the province of the jury to disbelieve any testimony which appeared to them to lack verity. They were the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. They could reject positive testimony and accept circumstantial evidence as proof of the facts, as it is elementary that direct evidence may be disbelieved and contrary circumstantial evidence relied upon to support a verdict or finding."

   Fraud, like any other fact, may be inferred from circumstantial evidence. (10 Cal.Jur. 809-810; 12 Cal.Jur. 829.) "From the secrecy with which unlawful undertakings are adopted it would be generally impossible to make such proof by direct testimony. Evidence is indirect as well as direct,—consisting of inferences and presumptions,—and it is code law that upon the trial of a case evidence may be given of any facts from which the facts in issue are presumed or are logically inferable." (*State of California* v. *Day*, 76 Cal. App.2d 536, 549 [173 P.2d 399], quoting *People* v. *Donnolly*, 143 Cal. 394, 398 [77 P. 177].)    Some of the additional facts from which the findings of fraud and intent not to deliver are logically inferable are here briefly recited, disregarding conflicting evidence as we are bound to do on appeal. The decedent was blind in one eye and so nearly

blind in the other that he could only decipher large newspaper headlines or, perhaps, with the aid of a jeweler's glass read ordinary print. Appellant lived with him in his home, kept his account books, wrote checks for him to sign and performed many other services of a highly confidential nature. She was in fact his eyes. Parenthetically, this highly confidential relationship itself cast upon her the exercise of the highest good faith in her dealings with her father, and in the absence of a showing to the contrary, would itself support an inference of undue advantage and constructive fraud. (*Johnson* v. *Clark,* 7 Cal.2d 529, 534-535 [61 P.2d 767]; *Campbell* v. *Genshlea,* 180 Cal. 213 [180 P. 336].) In 1939, when the decedent was informed by a real estate agent that appellant should sign a lease with decedent to the Shipley Street property because it stood in their two names as joint tenants he made the claim that he had been induced to sign the deed to the grantor in the joint tenancy deed under the misrepresentations that it was a step necessary to clear the title. This may not be taken as evidence of the fact claimed but the conduct of appellant and Attorney M in her presence in the face of this claim may be so considered. Despite her denial of the decedent's claim appellant permitted her father to sign the lease to the Shipley Street property as sole lessor. She and M went to John Lermen, decedent's attorney, to endeavor to get decedent to withdraw his claim of fraud. They did not disclose to Mr. Lermen that as a part of the same transaction decedent had signed a deed to the home which was not recorded. Mr. Eldridge, appellant's brother-in-law, at the request of decedent searched the records after the 1939 disclosure of the joint tenancy deed to discover if the title to the home property was also affected. Appellant learned of this fact, upbraided her sister for her husband's action, but made no disclosure of the unrecorded deed to the home which she held in her possession. In 1944, appellant learned that her father had executed a will in which decedent had left the home to her sister Mrs. Eldridge. She communicated her discovery to the witness, Mrs. Campbell, and seemed to be much disturbed by the incident. Again, however, she made no disclosure of the unrecorded deed. After her father's death appellant telephoned to Mr. Lermen, informed him of the deed of the home to her and that she had recorded it, but denied that she knew her father had left the home by will to Mrs. Eldridge although she had previously communicated that fact to Mrs. Campbell.

Add to these facts that appellant's testimony was in many respects inconsistent and that her testimony and that of Attorney M as to what occurred in their interview with Mr. Lermen was impeached by Lermen's contradictory testimony in many particulars and that much of appellant's other testimony was contradicted by other witnesses and we cannot say that from the whole evidence the inferences of fraud and lack of delivery were not reasonably drawn.

Appellant cites the rule, frequently reiterated, that proof of fraud must be clear and convincing. This is a rule for the guidance of the trial court in weighing the evidence and we must presume on appeal that the trial judge applied it and on the whole case found the evidence of fraud clear and convincing to his mind. It is now well settled that the clear and convincing evidence rule is satisfied on appeal if the findings of the trial court find substantial support in the evidence. (*Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P.2d 3] ; *Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732].)

The fact that the apparent joint tenancy in the Shipley Street property was established by two purported deeds, one from decedent to a third party and the second from the third party to decedent and appellant as joint tenants, does not change the character of the transaction. It was all one unified transaction and if induced by fraud which deceived decedent as to the nature of the transaction as found by the trial court it did not operate to divest decedent of his title or to vest appellant with a title in joint tenancy. The evidence is also clear that the deed to the home property was part of the same transaction and it is subject to the same inference of fraud.

It is claimed that as to the Shipley Street property decedent ratified the joint tenancy deed to appellant by devising the property to her in his several wills including the last one and by his failure to take any steps during his lifetime to clear the title. Ratification can only occur where the person ratifying has full knowledge of the facts. (*Mazuran* v. *Stefanich*, 95 Cal.App. 327, 334 [272 P. 772] ; *Brown* v. *Rouse*, 104 Cal. 672 [38 P. 507] ; *Ellis* v. *Jones*, 121 Cal.App. 325, 329 [8 P.2d 933] ; Civ. Code, § 2314.) Here it appears that after his discovery of the joint tenancy deed to the Shipley Street property no disclosure was made to decedent of the existence of the unrecorded deed to the home and his inquiries through his son-in-law disclosed that there was no such deed of record. The trial court was entitled to find that decedent

did not ratify the Shipley Street transaction because he was not in possession of all the material facts.

█ The cause of action on the cross-complaint was not barred by the statute of limitations. Decedent at all times was in possession of the home property by his personal occupancy and of the Shipley Street property through his tenants. "The right of the plaintiffs to have their title to the land quieted, as against a claim asserted by the defendant under this deed, was not barred, and could not be, while the plaintiffs and their grantors remained in the actual possession of the land, claiming to be the owners thereof, and the actual owners, as against the defendant, of all interest therein except the mere naked title." (*Smith* v. *Matthews*, 81 Cal. 120, 121 [22 P. 409]; *South Tule Ind. Ditch Co.* v. *King*, 144 Cal. 450, 455 [77 P. 1032]; *Secret Valley Land Co.* v. *Perry*, 187 Cal. 420, 426-427 [202 P. 449]; 16 Cal.Jur. 442; 22 Cal.Jur. 123.)

█ The decree appealed from annuls the deed to the home property and quiets the title of Mrs. Eldridge therein subject to administration. As to the Shipley Street property, which was devised to appellant, it annuls the deeds which created the apparent joint tenancy and quiets title in the executor subject to the determination of the probate court as to the proper distributee. It thus properly leaves for determination by the probate court the question whether appellant is entitled to take that property under her father's will or whether she has forfeited that right under the noncontestation clause.

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied May 27, 1949, and opinion was modified to read as above.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1949.