[Civ. No. 15769. First Dist., Div. One. June 3, 1954.]

ANITA McNULTY, Appellant, v. HERBERT COPP, as Executor, etc., et al., Respondents.

[Civ. Nos. 15770, 15771. First Dist., Div. One. June 3, 1954.]

OLIVE COPP ELDRIDGE, Respondent, v. ANITA McNULTY AHERN et al., Appellants.

Frank J. Fontes and Leo R. Friedman for Appellants.

George Herrington, Willard S. Johnston, William H. Orrick, Jr., Orrick, Dahlquist, Herrington & Sutcliffe for Respondents.

McMURRAY, J. pro tem.*—Three separate appeals are involved here. The first is an appeal from an order for payment of a cash appeal bond in *McNulty* v. *Copp,* No. 15769, which bond was posted on appeal therein; the decision on the appeal in that matter is reported in 91 Cal.App.2d 484 [205 P.2d 438] ; it will hereafter be called the original action. The second appeal is in *Eldridge* v. *Ahern,* No. 15770, and is from a judgment for the plaintiff in an action for accounting and for damages for the use and possession of the real property involved in the original action; this second appeal will hereafter be called the real property action. The third appeal is in *Eldridge* v. *Ahern,* No. 15771, and is from a judgment for plaintiff in an action for the possession and damages for the wrongful detention of certain personal property located

* Assigned by Chairman of Judicial Council.

in the residence on certain of the real property involved in the original action; this third appeal will hereafter be called the personal property action.

Mrs. Anita McNulty, plaintiff, cross-defendant and appellant in the original action, is the same person as Anita McNulty Ahern who is one of the defendants and appellants in the real property action and also in the personal property action; the other defendant and appellant in the last two actions is William Ahern, her husband. Mrs. Olive Copp Eldridge is Mrs. Ahern's sister and, with Herbert Copp, as executor of the estate of Henry W. Copp, deceased, was defendant, cross-complainant and respondent in the original action. Mrs. Eldridge was substituted as plaintiff for Herbert Copp, as executor, in the real property action and the personal property action and is the respondent in all actions.

All of the appeals deal either with certain real property which was the residence of Henry W. Copp, the father of Mrs. Ahern and Mrs. Eldridge, during his lifetime, or with personal property which was in said residence.

The facts here pertinent are that in January, 1945, Henry W. Copp died leaving a will by which he left his residence and an adjacent lot to Mrs. Eldridge. A few hours after his death Mrs. Ahern recorded a deed from her father to herself purporting to be signed and executed in 1933, and covering lots 4 and 5 of Block 9 in the St. Francis Wood subdivision in San Francisco. Henry Copp's residence was, in fact, on Lot 6 of said block; the garden adjacent to the residence was on Lot 5 of the same block. Mrs. Ahern filed the original action against her sister and the executor of her father's estate seeking reformation of the deed to recite the proper lots. The executor and Mrs. Eldridge defended on the ground of fraud, and cross-complained for cancellation of the deed and for quiet title. In this action it was found by the trial court that the deed recorded by Mrs. Ahern had been obtained by a fraudulent representation to her father, who was nearly blind and depended upon Mrs. Ahern to read to him, that the execution thereof was necessary to clear a defect in the title to certain real property, and that Henry Copp had never intended to execute any deed to his residence to Mrs. Ahern. Judgment was given on the cross-complaint ordering cancellation of the deed and quieting title, and was affirmed on appeal in *McNulty* v. *Copp*, 91 Cal.App.2d 484 [205 P.2d 438]. In the original action, in lieu of an undertaking on appeal, under Code of Civil Procedure, section 945, Mrs.

McNulty posted $9,100 in cash as provided in Code of Civil Procedure, section 1054a.

While the appeal in the original action was pending, the real property action, No. 15770, and the personal property action, No. 15771, were filed. By amendment to the answers after remittitur appellants pleaded that the original action was res judicata as to the subsequent actions.

Over objection by the appellants the trial court ordered that the motion for order to pay over the cash deposit in the original action be consolidated with the other two actions and, after trial, ordered the payment of the full amount of the deposit to Mrs. Eldridge and gave judgment for respondent and against appellants in the real property action and also in the personal property action for the sum of $22,042.61.

During the consolidated trial of the motion and actions it appeared that there had been a fire in the residence here involved and that certain items of personal property had been damaged. Among these items was a painting worth $3,000, according to testimony, which was so damaged as to render it valueless as a work of art. Mrs. Ahern concealed the true value of this painting from the executor and her relatives and had an artist patch up the picture so that its damaged condition would not be readily apparent to unskilled persons. The executor obtained an order in the probate court approving an insurance settlement of the total fire loss without any particular reference to this picture. The trial court allowed an amendment to conform to proof regarding this picture and found that appellants had concealed the true value of and extent of the damage to this painting from respondent and had by this fraudulent conduct damaged respondent in the amount of $2,900, the value of the painting less salvage value.

In his memorandum opinion in the real property and personal property actions the trial judge stated that Mrs. Ahern had been guilty of ''deliberate oppression, falsehood, fraud and malicious conduct in the prosecution and defense of these cases'' and that there should be an award of exemplary damages in the sum of $2,000, and allowed respondent to amend her complaint so to state. These statements were incorporated into the findings of fact, and the court, in addition, found that such oppression, fraud and malicious conduct applied as well to appellants' occupancy, retention and misappropriation of the real and personal property and the proceeds from the insurance of the damaged painting.

The court further found that the rental value of the

furnished residence was the sum of $200 per month and (despite testimony that for 17 months the house was not in condition to rent due to the fire damage although occupied by Mrs. Ahern) assessed damages for the full period of appellants' occupancy, including the time after judgment and before appellants' relinquishment of the property after remittitur in the original action, and provided that interest on the damages, compounded annually, be paid to Mrs. Eldridge for the entire period of time in question, both as to the value of use and occupancy and the value of the painting. The court further found that the facts and law determined in the original action were res judicata as to such matters in the subsequent actions and also found that appellants were constructive trustees for respondent of all the property involved.

There are eight questions involved:

1. Was the original action res judicata in the real property action?

2. Was the original action res judicata in the personal property action?

3. Was the probate order res judicata as to the claim for the destroyed picture; was there sufficient evidence to support the award of damages for the picture?

4. Was it error to award the fair rental value of the premises during the period they were damaged by fire?

5. Are the appellants liable for damages occurring without fault; are they entitled to offset expenses in preserving, maintaining and repairing the property?

6. Was it error to allow compound interest on the unliquidated claims?

7. Was it error to award exemplary damages?

8. Was it error to order payment of the cash deposited on appeal in the original action?

1. *Was the original action res judicata in the real property action?*

The judgment in the original action was rendered on a cross-complaint which prayed for cancellation of certain deeds and for a decree quieting title to the property therein described and granted both of these prayers. In *Bernhard* v. *Bank of America,* 19 Cal.2d 807, at page 810 [122 P.2d 892], it is said: "The doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction." And at page 811: "The rule is based upon the sound public

policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. [Citations.] The doctrine also serves to protect persons from being twice vexed for the same cause.'' Here the original action and the real property action both arose from the same wrong by Mrs. Ahern; that is, the wrongful possession of the real property by her. There can be no question that had respondent in the original action sought damages for this wrongful use and occupancy of the property a judgment therefor would have been proper as well as the judgment ordering cancellation and quieting title.

■ If the real property action is in fact the same cause of action as the original action the judgment in the first action is a bar in the later action; if, however, the real property action is a different cause of action, the original action only operates as a conclusive adjudication as to such issues as were actually litigated and determined in that action. (*Todhunter* v. *Smith,* 219 Cal. 690, 695 [28 P.2d 916].)

■ The fact that here the original action was determined on a cross-complaint makes no difference; the doctrine of res judicata applies as fully as if a separate action had been brought by defendant against plaintiff. (*Lamb* v. *Wahlenmaier,* 144 Cal. 91, 94 [77 P. 765, 103 Am.St.Rep. 66].)

Respondent vigorously contends that while she might have joined her claim for the recovery of the possession of the real property with a claim for damages for its withholding she was not required to do so, and may prosecute separate actions. In support of this position she cites: *Progressive Collection Bureau* v. *Whealton,* 62 Cal.App.2d 873 [145 P.2d 912]; *Title Guarantee & Trust Co.* v. *Monson,* 11 Cal.2d 621 [81 P.2d 944]; *Denning* v. *Green,* 119 Cal.App. 102 [6 P.2d 317]; *Carpenter* v. *Hamilton,* 24 Cal.2d 95 [147 P.2d 563, 153 A.L.R. 733]; *Slater* v. *Shell Oil Co.,* 58 Cal.App.2d 864 [137 P.2d 713].

*Progressive Collection Bureau* v. *Whealton,* 62 Cal.App.2d 873 [145 P.2d 912], was an action for collection of rent under a contract. The appellant there contended that a previous quiet title suit wherein this rental could have been recovered was res judicata. The fact that the obligation for the payment of rent was a contract obligation readily distinguishes this case from the instant one. The primary right there violated was the failure to pay certain amounts under a contract, whereas the primary right violated in the earlier quiet title action was the assertion by the defendant of a

title adverse to plaintiff, and arose independent of the contract.

*Title Guarantee & Trust Co.* v. *Monson,* 11 Cal.2d 621 [81 P.2d 944], was an action to recover rentals collected by defendants. A judgment in a prior action for specific performance had awarded possession to plaintiff and defendant urged that such action was a bar to further proceedings, as the claim for rent collected could have been litigated in the prior action. The court held that the action for the rents collected was not a necessary or indispensable issue in the prior action. Again, analysis reveals that the two actions arose from different rights. The action for specific performance was based upon contract provisions in a deed of trust; the action to recover rents collected by defendants was based on their wrongful act in collecting rents which belonged to plaintiff.

*Denning* v. *Green,* 119 Cal.App. 102 [6 P.2d 317], was also a case wherein, after a decree for plaintiff in a quiet title action, plaintiff sued for rents collected by defendant before the quiet title adjudication. The court denied the plea of res judicata interposed by defendant, even though in the quiet title action there appeared a finding that defendant collected and retained rentals in the sum of $920. The court said that the matter of rental not being an issue in the quiet title action, the finding was of no effect and the action was not res judicata on the matter of rental. Again, there are separate rights involved in the two actions: the first the assertion of an adverse interest in the real property by defendant, and the second the wrongful collection and retention of rents by the defendant.

The other cases relied on by respondent also involve the violation of more than one primary right, and therefore involve more than one cause of action.

So far as the real property action here involved is concerned in its relation to the original action the doctrine of res judicata must apply and operate as a bar to that subsequent action. Respondent cannot treat the wrongful possession of appellants and the withholding of possession as two separate acts or as a violation of two primary rights. The original action sought to quiet title to the real property and for a writ of possession as well as for cancellation of the purported deed. Assuredly this is the type of equitable action wherein the court could and should dispose of all claims relating to this property in the one action.

The fact that appellants' wrongful withholding had existed for a very short period of time at the institution of the original

action did not deprive respondent of the right to seek recovery of prospective damages for the withholding. In *Abbott* v. *76 Land & Water Co.*, 161 Cal. 42, at page 48 [118 P. 425], it is said: "Resorting as he did to an action in equity to compel specific performance of the contract, instead of an action at law for damages, the decree in his favor of the court having the power to give him all relief that he was entitled to on account of the breach is likewise conclusive and a bar to any subsequent action for relief based on the same contract. . . . In such a case it is no warrant for a second action that the party may not be able to actually prove in the first action all the items of the demand, or that all the damage may not then have been actually suffered. He is bound to prove in the first action not only such damage as has been actually suffered, but also such prospective damage by reason of the breach as he may be legally entitled to, for the judgment he recovers in such action will be a conclusive adjudication as to the total damage on account of the breach." That a contract was there involved while here there is a tort does not affect the plain meaning and application of this language.

When the purpose of the original action here is scrutinized it is apparent that the essential deliction alleged is the wrongful possession of the real property. This is so even though the cross-complaint is in the nature of a suit to quiet title, a more usual remedy than ejectment to put one in possession of property occupied by another, and also asks that the purported deed be cancelled as an ancillary remedy to the quiet title relief sought. In view of the rule stated in *Abbott* v. *76 Land & Water Co.*, *supra*, a consideration of the original action and the remedies sought therein and granted in the judgment raises the question as to why respondent did not seek damages for the wrongful use and occupancy of the real property. The same wrongful act—the possession under a false claim of right—gave rise to both the original action and the real property action. To allow the subsequent real property action to be prosecuted is to allow respondent to split the same cause of action.

"[A] party may not split up a single cause of action and make it the basis of separate suits. . . ." (*Wulfjen* v. *Dolton*, 24 Cal.2d 891, 894 [151 P.2d 846].) This rule is merely another application of res judicata. The first judgment acts as a bar, thus prohibiting a second suit on the same cause of action or one of its indivisible parts. (40 Cal.

L.Rev. 412, 419. *Van Horne* v. *Treadwell,* 164 Cal. 620 [130 P. 5], is to the same effect.)

The case of *McCaffrey* v. *Wiley,* 103 Cal.App.2d 621 [230 P.2d 152], is particularly apposite to the question here involved. In that case the plaintiff and the defendant were both lessees of the same land from the same lessor. The defendant had in good faith entered into possession of the land and commenced farming it under the terms of his lease. Plaintiff sued in ejectment and recovered judgment. Thereafter plaintiff brought this action to recover damages for the wrongful withholding of possession for the time defendant had occupied the land. The court said at page 623: ''It is well settled in this state that a party may not split a single cause of action, using the same obligation as the basis of separate suits, and that where this is done the judgment in the first action may be pleaded as a bar to a subsequent suit based on the same fundamental claim which could have been presented in the first action.'' And in the same opinion at page 624: ''The matter of ejectment and the matter of damages for withholding possession are both based upon the same invasion of the same right.'' There is no valid distinction which can be based upon the fact that in the McCaffrey case the original action was in ejectment, while here the original action was for quiet title, since ''If the action to quiet title is brought by a party out of possession against one claiming title who is in possession, the action, although specifically authorized by section 738 [Code Civ. Proc.], is in substance one of ejectment. . . .'' (25 Cal.L.Rev. 565, 569.)

The court in the case of *McCaffrey* v. *Wiley, supra,* at page 624, also said: ''In the instant case, the one primary right involved was the right of the appellant to possession of the land and there was but one violation of that duty on the part of the respondent. Both actions were based on the same invasion of the same right, and under the well established rules with respect to the splitting of actions which prevails in this state the appellant should have presented his claim for damages in the prior action, and by failing to do so he must be held to have waived it.''

The very fact that section 945 of the Code of Civil Procedure provides that on appeal from a judgment or order directing the delivery of possession of real property (as was here the case), the appellant must execute an undertaking to the effect that if the judgment be affirmed he will pay the value of the use and occupancy of the property from the

time of the appeal to the delivery of possession of the realty, indicates that damage for use and occupancy of real property is a necessary incident of a suit for possession of realty. In the instant matter the cash deposit in lieu of bond was made in the sum of $9,100 which, under the provisions of the above sections, was the amount fixed by the court for the undertaking. Certainly, so far as the order for payment of that deposit made herein was concerned, the greatest amount the court could order paid was for $9,100; the only action in which this deposit was available was the original action and the only damages to which it could be ordered applied were those for the use and occupation of the real property from the time of the appeal until the delivery of possession of the realty after the affirmance of the judgment.

Whether or not a party is aware of the damages at the time of prosecution of the prior action does not lift the bar of res judicata. (*Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636 [134 P.2d 242].)

From what has been said it is apparent that the appellants' plea of res judicata in the real property action should have been sustained.

2. *Was the original action res judicata as to the personal property action?*

By applying the rules discussed above to the action seeking damages for the wrongful detention of the personal property it can be seen that the damages sought are not occasioned by the same breach or deliction involved in the original action.

Appellants vigorously urge that the furnishings in the residence were necessarily involved in the original action, and in support, point to a statement in the judgment therein that the claim of Mrs. Ahern to the residence lots "and to the improvements thereon and the furnishings thereof, . . . is without right and . . . [that she] has no right, title or interest therein or thereto." Appellants further contend that the original action by including in the findings of fact therein the language of Henry W. Copp's will which left the residence to Mrs. Eldridge "including all furnishings therein" conclusively determined the personal property action.

In support of their position appellants cite *Heffernan* v. *Bennett & Armour,* 63 Cal.App.2d 178, 184 [146 P.2d 484], to the effect that: "If and when an attack is made in the complaint on an alleged fraudulent conveyance the plaintiff may not split the cause of action and attack separately the convey-

708

ance of real estate and secondly the conveyance of personal property. If the attack is made otherwise the pleader splits his cause of action and must suffer the consequences." (P. 184.) This undoubtedly is a correct statement of the law as applied to the facts in that case, one wherein the basic question was one of venue, but it is not persuasive in the instant case.

The case of *Denning* v. *Green*, 119 Cal.App. 102 [6 P.2d 317], is more nearly in point in the instant case. There, in an action to recover rents wrongfully collected by defendant, a prior quiet title action was held not to be a bar to such recovery. The court said at page 105: "In that action [the prior quiet title action] the complaint and other pleadings do not mention rental. The complaint is the simple and ordinary form to quiet title. In the findings, however, the trial court finds that appellant collected and retained rental in the sum of $920. There is no mention of rental in the conclusions of law or in the judgment. The evidence in the former case is not before us. It thus appears, and we must conclude that the matter of rental was not an issue in the case. Matters not in issue in the previous action are not *res judicata*. (15 Cal.Jur., p. 134.) The finding made upon the matter of rental was clearly outside the issues, and cannot constitute a bar to the present action." The case clearly stands for the proposition that in determining the question of the application of the doctrine of res judicata the court must consider the record before it.

■ By analogy, in the instant case the casual references to the furnishings cannot be construed as bringing them into issue in what we have seen was in effect a suit for ejectment. There was no itemization or attempt at itemization of furnishings in the original action. ■ Certainly the wrongful possession of the real property is the violation of a different right than that involved in the wrongful possession and detention of the personal property. Of course, there is no question that an action for the return and the value of possession of the personal property could have been joined with the original action, but it is not so inherently connected with the original action as to require the application of the doctrine of res judicata when it is not so joined. ■ The personal property action is one that is the same as the common law action of detinue; it sounds in the wrongful possession of personal property and seeks restoration of the property as well as damages for its wrongful detention. It would be a needless and unsound extension of the doctrine of res judicata

to hold that where two separate rights are violated, one dealing with real property and one with personal property, it is incumbent on the plaintiff to unite such actions. The case of *Heffernan* v. *Bennett & Armour, supra,* is clearly distinguishable. That suit was one to set aside a fraudulent conveyance of both real and personal property made at the same time and as part of the violation of the same right, that is, the conveyance was made to defraud creditors. In the instant case we have the violation of two separate rights—the one concerned with real property, the other with personal property.

The references to personal property in the pleadings in the original action do not appear to be of sufficient importance to compel the conclusion that the right to possession and damages for detention of that property were necessarily decided in the original action. Admittedly, it would have been better to have omitted all references to the furnishings from the original action, but the casual references thereto are not sufficient to show that they were a subject of litigation in that action.

Furthermore, had the original action determined the personal property action the appeal therein should have, and assumedly would have, been accompanied by an undertaking on appeal in the manner prescribed in Code of Civil Procedure, section 943. No such undertaking was posted; by failing to do so it indicates that at the time of appeal in the original action appellant considered the action to be one relating to real property only.

The plea of res judicata was properly denied in the personal property action.

3. *Was the probate order res judicata as to the destroyed picture?*

The probate court authorized the settlement of certain fire damage to personal property for the total sum of $2,098.44. It appears from evidence in the record in the personal property action that at the time of this probate appearance the executor did not know the value of a certain painting in the house. Mrs. Ahern had this painting appraised by an expert who set the value thereof at $3,000 and found it to be a total loss. Thereafter, negotiations for settlement of the loss were carried on with the insurance company and a settlement was agreed upon whereby $1,000 was accepted by Mrs. Ahern as the amount payable for the painting, but with the understanding that no one in the family should be advised

thereof. The attorneys for the executor never received a copy of the $3,000 appraisal, and never knew the picture was a total loss. The petition for compromise of the claim for insurance was presented with the representation that the amount sought therefor had been paid out by Mrs. Ahern for the repair of the furniture, that it was all repaired, and the order approving the compromise directed the payment of the money to Mrs. Ahern by the executor. The trial court in the *instant* case believed that Mrs. Ahern had caused a fake restoration of the painting, and had concealed the fact of the extent of the loss from the executor. The trial court's conclusion from the testimony is not without respectable evidence in support.

It has been held that, where a probate order of distribution was obtained by fraudulently withholding facts from a legatee, the legatee might thereafter recover his just share in an action in other than the probate court. There the defendant was an executrix and was held to be a constructive trustee for the plaintiff. (*Blair* v. *Mahon*, 104 Cal.App.2d 44 [230 P.2d 832].)

How it can be urged that the matter of the damage to this painting was necessarily determined by a court which had no knowledge of the value of the painting, because of Mrs. Ahern's fraudulent concealment of its value and even its existence from the court, is a difficult proposition to understand. Appellants, of course, contend that there was no fraud practiced, but the record is adequate to support the finding of the trial court in that respect.

Appellants here were in possession of the painting by reason of a void claim. Even if they were not trustees, they were trespassers. If the property in their possession suffered loss during their unlawful holding of it they are liable for the full amount of that loss. The wrongful possession of appellants does not entitle them to seek at this time to charge the executor of an estate with negligence when his alleged negligence was induced by wrongful actions by one of the appellants. The destruction of the painting while in possession of appellants gave respondent the right to recover the full value thereof. If the painting had been delivered to respondent in good condition she might only recover the damages arising from the detention.

Mrs. Ahern elected to rely upon her possession as being rightful. The converse has been found. She cannot now escape the damages to the property so held by her by maintaining that the cause of damage was beyond her control.

The probate proceedings are not res judicata as to the painting, since no issue was before the probate court necessarily involving the painting.

4. *Was it error to award the fair rental value of the premises during the period they were damaged by fire?*

In view of the conclusion reached that the real property action was barred by the doctrine of res judicata, it is not necessary to determine this question relative to that portion of the damages allocable to the real property withholding. The period during which the real property was damaged by fire was within the time between the filing of the initial complaint in the original action and the trial thereof. The findings of fact, conclusions of law and judgment on the consolidated trial of the motion for payment of the cash deposit, and the real property action, do not, however, segregate the damages as to the value of the use and occupancy of the realty and the damages for the wrongful detention of the personalty. Instead, an award of $200 per month was made for the value of the use and occupancy of the furnished residence.

The damages sought for the detention by appellants of the personal property are not, as appellants seem to contend, rent from appellants for their use and enjoyment of the property, but are in the nature of compensation to respondent for wrongfully depriving her of the use and enjoyment of the property. The fact that the rental value of the property is used as the measure of damages does not make those damages rent.

Therefore, so far as the personal property action is concerned, the assessment of damages for the time the property was damaged by fire was proper.

5. *Are the appellants liable for damages occurring without fault; are they entitled to offset expenses in preserving, maintaining and repairing the property?*

What has been said regarding damages to the painting resolves the first part of this question; the same reasoning applies to the remainder of the question. Appellants by asserting a void right are mere volunteers so far as payment of taxes, payment for repairs and expenditures for other maintenance are concerned. (*McMillan* v. *O'Brien*, 219 Cal. 775 [29 P.2d 183].)

6. *Was it error to allow compound interest on the unliquidated claims?*

The trial court allowed compound interest in these claims. Appellants contend that neither simple nor compound interest

was allowable. There can be no doubt that simple interest could have been allowed. This question also is determined, as to the damages awarded for the wrongful use and occupancy of the real property up to the time of appeal of the original action, by the conclusion reached relative to the application of res judicata to the real property action.

The allowance of interest on that portion of the damages allocable to the wrongful detention of the personal property including the painting is, however, still a question which must be determined. ■■■ Section 3288 of the Civil Code allows the jury to award interest in an action on tort in ''every case of oppression, fraud or malice.'' This section has been held to give like power to a judge who is the trier of the facts. (*Isaacs* v. *Frank Meline Co.,* 2 Cal.App.2d 341 [37 P.2d 1045].) The record before the court in the personal property action included all records in the original action and, together with much of the testimony in the personal property action, amply supports a conclusion that Mrs. Ahern was guilty of fraud. Simple interest could have been allowed. The court allowed, however, compound rather than simple interest. This was proper. There are many cases cited dealing with the right to award such damages when there is a showing of wrongdoing on the part of a trustee, whether voluntary or involuntary. (*Falkner* v. *Hendy,* 80 Cal. 636 [22 P. 401]; *In re Thompson,* 101 Cal. 349 [35 P. 991, 36 P. 98, 508]; *Long* v. *Neeland,* 118 Cal.App. 203 [4 P.2d 815]; *Katz* v. *Enos,* 68 Cal.App.2d 266 [156 P.2d 461].)

7. *Was it error to allow exemplary damages?*

■■■ The findings in the original action show that Mrs. Ahern pursued a course of conduct which clearly shows a fraudulent intention. Much of her testimony in the consolidated trial of the later actions is of such nature as to justify the judge in inferring a fraudulent intent on her part.

Appellants cite numerous cases on malicious prosecution to attempt to escape the exemplary damages. They further contend that there is no pleading which justifies the award. The pleadings appear to be adequate to bring this case within the scope of section 3294 of the Civil Code. That section reads as follows: ''In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.''

A mere reading of this section and reading of the record of the original action and of the personal property action here shows this to be precisely the type of situation contemplated by the code provision. The award was proper.

8. *Was it error to order payment of the cash deposited on appeal in the original action?*

This question is presented by appellants in such a confused manner that it is difficult to follow the argument. The contention is made that the obligation of the sureties is barred by the judgment in the original action and by the statute of limitations. Here there is no question of the liability of any sureties; there was a cash deposit in lieu of undertaking; that cash was deposited for the express purpose of assuring payment of the damages for the use and occupation of the realty from the time of appeal to the time possession thereof was surrendered; the motion to order payment thereof was not barred by any statute of limitations. The order for payment of the full amount made here is not supported by the record, since it does not allocate specifically the amount of damage occurring between the date of appeal and the surrender of possession.

The order appealed from in the original action, No. 15769, is reversed with instructions to conduct a hearing to determine the amount of damage suffered by the use and occupancy of the realty of appellants during the time between the appeal and the surrender of possession of the premises to respondent and to then order the payment of the amount so determined from the cash on deposit in lieu of undertaking.

The judgment appealed from in the matter of the real property action, No. 15770, is reversed, judgment to be entered for appellants.

The judgment appealed from in the matter of the personal property action, No. 15771, is reversed and remanded for trial in accordance with the statements here contained in order to determine what damages were occasioned by the wrongful detention of the personal property including the painting.

Appellants to recover their costs in all three appeals.

Peters, P. J., and Bray, J., concurred.

Petitions for a rehearing were denied July 2, 1954, and appellants' petition for a hearing by the Supreme Court was denied July 28, 1954.