Filed 2/9/23  Ruiz v. Ruiz CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MANUEL L. RUIZ,<br><br>    Plaintiff, Cross-Defendant and Respondent,<br><br>v.<br><br>MARIBEL RUIZ,<br><br>    Defendant, Cross-Complainant and Appellant. | 2d Civ. No. B315514<br>(Super. Ct. No. 56-2019-00524937-CU-OR-VTA)<br>(Ventura County) |

Manuel L. Ruiz and his sister, Maribel Ruiz, are co-owners of residential property located at 1254 South K. Street in Oxnard (the Property).  Manuel claims an 83.5 percent interest, while Maribel asserts an adverse 50 percent joint tenancy interest.[1]

Manuel brought this action to quiet title to the Property and for partition by sale and an accounting.  Maribel cross-

---

[1] For sake of clarity, we refer to the parties by their first names.  No disrespect is intended.

complained for partition, appointment of a receiver and an accounting. The parties waived a jury.

The trial court heard evidence regarding the legal effect of the recorded grant deeds and the allocation of the anticipated partition sale proceeds. A principal issue was the effect of a September 2003 grant deed (Trial Ex. 7) purporting to transfer Manuel's entire interest in the Property to Maribel. Finding that Manuel's signature was forged and that "Maribel's explanation, knowledge, or lack thereof, of the 'Forged Deed' was not credible," the court ruled in Manuel's favor. It determined he has an 83.5 percent interest in the Property and that Maribel holds the remaining 16.5 percent.

Maribel contends the trial court erred by failing (1) to correctly assess the parties' respective ownership interests in the Property; (2) to correctly determine the parties' obligations regarding the mortgage loan Maribel obtained to renovate the Property; (3) to apply the partition statutes to award Maribel compensation for those renovations; and (4) to consider whether the doctrine of ratification applies to Manuel's conduct. Maribel further asserts the trial court abused its discretion by awarding Manuel the $4,490 in costs he incurred in proving a fact she denied in response to his request for admissions. We affirm in all respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Property*

The parties' parents purchased the Property in 1971. Manuel, Maribel, and their siblings grew up in the home.

In 1993, Manuel purchased his father's interest in the Property. His mother later transferred her interest to him, giving Manuel sole legal title.

In 2003, Manuel agreed to give Maribel a 33 percent interest in the Property if she obtained the funds to construct room additions. The parties recorded a grant deed to that effect in August 2003 (Trial Ex. 6), and Maribel applied for a mortgage loan in her name only.

The parties hired a contractor, Omar Lara, to construct the addition to the Property. The existing one-story home was "roughly 1500, 1600, or 1900 square feet." The renovation, which cost $161,000, resulted in a two-story, 3,000-square-foot home. Both Manuel and Maribel signed the construction contract.

After the lender approved the $217,600 loan, Maribel executed a promissory note and deed of trust securing the loan (Trial Ex. 8). The deed of trust was recorded on September 25, 2003. Earlier that same day, the September 2003 grant deed (Trial Ex. 7) transferring Manuel's entire interest in the Property to Maribel also was recorded.

Manuel testified that he did not sign the September 2003 grant deed and did not know of its existence until after it was recorded. After receiving the deed in the mail, Manuel confronted Maribel and "told her to go and fix these papers because they were very wrong."

Although Manuel did not know who signed his name to the grant deed, he testified that Maribel "knows who signed" it. Maribel, however, disclaimed any knowledge of the grant deed. The trial court found that "Maribel's explanation, knowledge, or lack thereof, of the 'Forged Deed' was not credible." It noted that "Maribel closed the mortgage loan, borrowed the money for the room additions that she wanted, in her name alone, *and she wanted the house for herself*." (Italics added.)

Handwriting examiner Sheila Lowe testified that she analyzed the September 2003 grant deed, comparing it to

Manuel's known signatures. She concluded that the signature on the deed is "an unsuccessful attempt to simulate [Manuel's] signature and, therefore, not genuine."

Based on this evidence, the trial court found that the September 2003 grant deed "is a forgery" and is therefore "void *ab initio*."

In February 2004, Maribel executed and recorded a grant deed transferring her interest in the Property to herself and Manuel as joint tenants (Trial Ex. 9). Given that the September 2003 grant deed was deemed "void *ab initio*," the trial court determined Maribel held only the 33 percent interest previously granted to her by Manuel (Trial Ex. 6). The court found that the February 2004 grant deed divided that 33 percent interest in half, giving both Maribel and Manuel a 16.5 percent interest as joint tenants.

The trial court concluded that Manuel had established, by a preponderance of the evidence that, as of June 14, 2019, he has an 83.5 percent interest in the Property (67 percent as sole owner plus 16.5 percent as a joint tenant), and that Maribel has a 16.5 percent interest as a joint tenant.

### B. Mortgage Loan

The mortgage loan proceeds were distributed as follows: "$12,772.00 to creditors of Maribel; $10,559.88 for closing costs; and $194,268.12 to Maribel." Maribel paid for the home renovation from those funds and also made the monthly mortgage loan payments. For "about a year," Manuel and their brother Lionel each gave Maribel $100 a month toward the loan. When Maribel moved out in 2012, she stopped making the loan payments. Manuel then started making the payments, believing he would lose the Property otherwise.

4

The trial court rejected Maribel's assertion that Manuel agreed to pay 50 percent of the mortgage loan payments and therefore owes her $87,144.52. It noted that "[a]ny alleged agreement to pay 50% of this loan is not memorialized in a writing signed by the parties, and is unenforceable under the Statute of Frauds, as the loan here is a 30-year term and . . . 'by its terms is not to be performed within a year from the making thereof.' (Civ. Code, § 1624, subd. (a)(1).)"

The trial court granted Manuel's claim for reimbursement, finding he is entitled to recover the payments he made on Maribel's mortgage loan between April 1, 2012 and April 1, 2021.

### C. Judgment

The judgment allows Manuel to purchase Maribel's "interest in the Property at fair market value, via a receiver . . . , or other method as agreed upon by the parties;" and provides that the gross sale proceeds shall be divided in accordance with the parties' respective ownership interests. In addition, Maribel is charged with the mortgage loan payoff amount, the $59,353.89 owed to Manuel for mortgage loan principal payments and the $54,000 owed to Manuel for mortgage loan interest payments. Should these charges result in a negative number, Manuel is entitled to a money judgment "for the amount of that shortfall."

### D. Costs of Proof Award

During discovery, Manuel propounded requests for admission to Maribel, in which he asked her to admit: 1. "The signature purporting to [b]e that of Manuel Ruiz on the Grant Deed recorded in the Official Records of Ventura County as Instrument number 20030925-0364570 is a forgery." Maribel responded by stating: 1. "Responding party lacks sufficient information to admit or deny this request for admission and therefore denies it."

Maribel's denial of the request required Manuel to prove the issue at trial. After he prevailed, Manuel moved for costs of proof in the sum of $4,490. (Code Civ. Proc., § 2033.420.)[2] The trial court granted the motion and awarded Manuel "$4,490 in costs associated with the proof of the denied request for admissions." The court found that the "claimed costs are reasonable" and that Maribel had failed to establish "one of the grounds listed under [section 2033.420, subdivision (b).]"

## II. DISCUSSION

### A. Standard of Review

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; see *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59-60.

"An appellate court has no right to retry a case on the facts. Our whole duty as to the factual showing is to determine whether there is substantial evidence to support the conclusion of the trier of fact even though there is contrary evidence equal to, or even greater than, that which favors the trial court's decision. We cannot weigh the evidence, or pass upon the credibility of the witnesses. If we reach a conclusion that there is substantial evidence to support a judgment or order we must affirm it (*Berniker v. Berniker* (1947) 30 Cal.2d 439), even though we

_____

[2] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

6

might have reached a contrary conclusion . . . if we had been the triers of fact below." (*Kallman v. Henderson* (1965) 234 Cal.App.2d 91, 96-97 (*Kallman*); *In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

We review "an interlocutory judgment of partition [for] abuse of discretion." (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 596-559.) Under that standard, "[t]he trial court's 'application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.]" (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)

We review an order granting fees and costs fees under section 2033.420 for abuse of discretion. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1275-1276; *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 637, fn. 10.)

### B. Maribel Has Not Demonstrated that the Trial Court Abused Its Discretion by Partitioning the Property

Maribel contends the trial court erred by failing to consider the partition statutes in its ruling. She cites section 872.140, which states: "The court may, in all cases, order allowance, accounting, contribution, or other compensatory adjustment among the parties according to the principles of equity." Maribel claims she was entitled to compensation for enhancing the Property's value through the home renovation.

It generally is true that a cotenant who improves real property is entitled to contribution from other cotenants and, on partition by sale, is entitled to reimbursement for those expenditures before division of the proceeds among the property owners. But the parties can agree otherwise. (*See, e.g., Milian v. De Leon* (1986) 181 Cal.App.3d 1185, 1194 (*Milian*).)

In *Milian,* the trial court declined to order an accounting and reimbursement "because it found an agreement between the

7

parties to own and divide the property equally irrespective of the exact dollar contributions of each party to the purchase price or to the subsequent improvement, maintenance, or preservation of the property." (*Milian, supra,* 181 Cal.App.3d at p. 1194.) The court found that the parties were competent to make such an agreement and that the "critical question on appeal is whether the court's finding of such an agreement is supported by substantial evidence." (*Ibid.*)

Here, the trial court found "Manuel agreed to grant Maribel a 33% interest in the Property in exchange for Maribel's monetary investment in the Property for the construction of room additions," and "had [the August 2003] grant deed drawn up for this purpose." Maribel contends the trial court misconstrued the effect of the August 2003 grant deed (Trial Ex. 6). Instead of granting her a 33 percent interest in the Property, as found by the trial court, Maribel claims the deed granted her sole title to 33 percent of the Property plus a 50/50 joint tenancy interest with Manuel in the remaining 67 percent. We are not persuaded.

Grant deeds generally are interpreted in the same manner as contracts. (Civ. Code, § 1066; *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 521.) "The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.]." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.)

8

The parties agree the grant deed's language is ambiguous in that the grant is from Manuel to "MANUEL L. RUIZ, a single man, and MARIBEL RUIZ, a single woman *with the 33%*, all as a joint tenant." (Italics added.) It is undisputed Maribel did not previously have an ownership interest.

Manuel testified that he and Maribel had agreed to the 33 percent interest and that he instructed the notary public who prepared the grant deed "to add 33 percent for my sister, and that's it." No other explanation was given for the words "a single woman with the 33%."

As for the words "joint tenant," the trial court correctly noted that a joint tenancy cannot exist where, as here, the parties were accorded unequal interests. (*Yeoman v. Sawyer* (1950) 99 Cal.App.2d 43, 45-46; *Milian, supra,* 181 Cal.App.3d 1185 at p. 1195 ["[B]y definition joint tenancy ownership means equal ownership"]; see Civ. Code, § 683, subd. (a) ["A joint interest is one owned by two or more persons in equal shares"].) Given the parties' unequal ownership interests, we conclude substantial evidence supports the court's finding that Maribel had received a 33 percent interest in the Property as a tenant in common with Manuel. (See *Yeoman*, at pp. 45-46.)

We also are not persuaded by Maribel's argument that the contract for the renovation establishes the parties' intent to own the Property 50/50 as joint tenants. Both Manuel and Maribel signed the contract, thereby agreeing to pay for the renovation costs, but the contractor, Omar Lara, testified that *all* the renovation costs were paid by Maribel. This evidence supports the trial court's finding that Manuel and Maribel agreed she would receive a 33 percent interest in the home in exchange for payment of the renovation costs.

*C. Maribel Has Failed to Demonstrate that the Trial*
*Court's Ruling on the Statute of Frauds Defense*
*Constituted Prejudicial Error*

Maribel testified that Manuel had orally agreed to pay 50 percent of all the mortgage loan payments. The trial court rejected this testimony, citing the statute of frauds. It concluded that "[a]ny alleged agreement to pay 50% of this loan is not memorialized in a writing signed by the parties, and is unenforceable under the Statute of Frauds, as the loan here is a 30-year term and . . . 'by its terms is not to be performed within a year from the making thereof.' (Civ. Code, § 1624[, subdivision] (a)(1).)"

Maribel argues this was error because Manuel did not assert the statute of frauds as an affirmative defense in his answer to her cross-complaint. As Manuel points out, however, Maribel did not allege the existence of an oral agreement in her cross-complaint. Since the claim first arose during her trial testimony, Manuel appropriately asserted the defense at that time.

Maribel does not contend the trial court's application of Civil Code section 1624, subdivision (a)(1) to the claimed oral agreement is incorrect. Rather, she asserts the court committed reversible error by failing to "address[] the issues raised by its usage" of the statute of frauds defense, and to "examine[] the legal and/or factual basis of that usage, and whether any exception applied."

A statement of decision requires an explanation of the factual and legal bases of the court's decision on the principal controverted issues at trial; the court is not required to address every question. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th

10

1509, 1530-1531; *Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230.)

But even if we assume the trial court erred by failing to issue a more detailed statement of decision regarding its application of the statute of frauds, such error "is not reversible per se, but is subject to harmless error review." (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) Under this standard, the appellant must demonstrate that the error was prejudicial. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337; *F.P.*, at p. 1114 [It "'is not error, or at least, . . . not a prejudicial error'" where the trial court's failure to make a finding on an issue "'could make no possible difference in the result'"]; *Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 308 ["[A]ppellant bears the burden to show it is reasonably probable he or she would have received a more favorable result at trial had the error not occurred"].)

Having made no attempt to demonstrate prejudicial error, Maribel has forfeited the issue as a basis for appellate relief. (*Vought Construction Inc. v. Stock* (2022) 84 Cal.App.5th 622, 630, fn. 7; *Molinaro v. Molinaro* (2019) 33 Cal.App.5th 824, 829, fn. 4.) Among other things, Maribel complains the trial court failed to consider the "numerous exceptions" to the statute of frauds, but she does not identify those exceptions or explain how their consideration would have made a difference in the outcome.

*D. Maribel has Not Demonstrated the Trial Erred by Rejecting Her Ratification Defense*

Maribel contends the trial court erroneously failed to consider her ratification defense. Maribel raised this contention in her objections to the proposed statement of decision. The trial court overruled the objection, evidencing its consideration of the issue.

"Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73 (*Rakestraw*).)

Maribel claims Manuel "accepted [her] actions in obtaining the loan and renovating the residence and by doing so he ratified the use of the September 2003 Grant Deed, the loan, the construction contract and the renovation, and his responsibility to pay for it all." (Italics omitted.)

We conclude substantial evidence supports the trial court's finding that Manuel did not ratify the forged September 2003 grant deed. As soon as he became aware of that deed, he demanded that Maribel restore his name to title. There was no finding that Manuel believed the mortgage lender relied upon the forged deed.

"Ratification can only occur where the person ratifying has full knowledge of the facts." (*McNulty v. Copp* (1949) 91 Cal.App.2d 484, 492.) That did not occur here. This case is not like *Rakestraw*, where the wife knew the lender had relied upon and she benefited from the forged promissory note and deed of trust yet she took no action to remedy the situation until the lender filed suit three years later. (*Rakestraw*, *supra*, 8 Cal.3d at p. 71.)

In addition, the trial court found that Maribel's testimony regarding her knowledge of the September 2003 grant deed, i.e., the forged deed, was not credible and that she "closed the mortgage loan, borrowed the money for the room additions that she wanted, in her name alone, and she wanted the house for herself." These factual findings, which are supported by substantial evidence, are inconsistent with Maribel's ratification

12

defense.  We are bound by these findings, particularly as they involve credibility.  (*Kallman*, *supra*, 234 Cal.App.2d at pp. 96-97.)

### E.  The Trial Court Properly Found That Maribel Has a 16.5 Percent Interest in the Property

Maribel claims the trial court erred when it determined, based upon the February 2004 grant deed (Trial Ex. 9), that she now has only a 16.5 percent ownership interest in the Property.  Despite what either party intended, that grant deed on its face transferred Maribel's interest in the Property to herself and Manuel as joint tenants.  The question is what exactly was her interest at that time.

The prior grant deed in the chain of title – the September 2003 grant deed (Trial Ex. 7) – granted Maribel exclusive title to the property.  The trial court found that the grantor's signature had been forged.  "'[A] forged document is void *ab initio* and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor.'  [Citations.]" (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 380.)

The trial court determined that because the September 2003 grant deed was void *ab initio,* it did not transfer any property interest to Maribel.  Instead, the court looked to the prior deed in the chain of title – the August 2003 grant deed (Trial Ex. 6) – which granted Maribel a 33 percent interest in the Property pursuant to her agreement with Manuel.  The court determined that was Maribel's property interest at the time she executed the February 2004 grant deed.

Maribel maintains the February 2004 grant deed gave her and Manuel 50/50 joint tenancy title.  That may have been the case if the September 2003 grant deed had not been declared *void ab initio.*  Without that deed in the chain of title, the trial court

13

properly looked to the prior grant deed in the chain. That deed granted Maribel a 33 percent interest, which was divided in half by her grant in the February 2004 grant deed. Maribel has not demonstrated that the court erred by finding Manuel has an 83.5 percent interest in the Property (67 percent as sole owner plus 16.5 percent as a joint tenant), and that Maribel has a 16.5 percent interest as a joint tenant.

### F. The Trial Court Did Not Abuse Its Discretion by Awarding Costs of Proof to Manuel

Maribel contends the trial court abused its discretion by granting Manuel's request for the $4,490 expended in proving that the September 2003 grant deed (Trial Ex. 7) is a forgery.

Section 2033.420, subdivision (a) provides: "If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees."

Maribel argues that (1) Manuel's declaratory evidence was insufficient to establish that he incurred $4,490 in costs to prove the forgery, (2) Manuel should have moved to compel a further response to the request for admission before seeking costs, (3) Maribel had a reasonable basis for believing she would prevail on the forgery claim and (4) Maribel had a good reason for failing to admit the request because she had yet to file an answer to Manuel's complaint.

We are not persuaded by these arguments. We agree with the trial court that the $4,490 cost of proving the forgery was

14

reasonable given Maribel's denial. Manuel had to retain a handwriting expert, who testified at trial, and his attorney had to prepare for and present that defense.

The attorney's declaration itemizes the costs incurred in proving the defense: $2,600 in expert fees for consultation, analysis and trial testimony, and $1,890 in attorney fees (5.4 hours at $350 per hour). The declaration amply supports these relatively modest expenses.

## III.  DISPOSITION

The judgment is affirmed.  Respondent shall recover his costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.[*]

We concur:

GILBERT, P.J.

YEGAN, J.

---

[*] Judge of the Ventura Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California constitution.

15

Jeffrey G. Bennett, Judge
Superior Court County of Ventura

_____

Law Office of Michael A. Morrow, Michael A. Morrow, on behalf of Defendant, Cross-Complainant and Appellant.

Christina Vanarelli, Inc., Christina Vanarelli, on behalf of Plaintiff, Cross-Defendant and Respondent.