[L. A. No. 18679.   In Bank.   Apr. 10, 1944.]

MARGARET B. CARPENTER et al., Appellants, v. ARCHIBALD J. HAMILTON, Respondent.

Roy A. Linn for Appellants.

Meserve, Mumper & Hughes and Roy L. Herndon for Respondent.

SHENK, J.—The plaintiffs brought this action to quiet title to a parcel of land in Los Angeles County. The defend-

ant claimed through a trust deed executed by the plaintiffs and a court foreclosure thereof pursuant to section 725a of the Code of Civil Procedure. The plaintiffs claimed ownership by virtue of a declaration of homestead filed after the deed of trust was recorded. The defendant had judgment and the plaintiffs appealed.

In April 1935 the defendant was the owner of the land on which a residence was located. In that month he sold the property to the plaintiffs for $12,500; $5,000 in cash and the balance of $7,500 secured by a note and deed of trust. The deed of trust was recorded on May 9, 1935. On August 14, 1935, the plaintiffs' declaration of homestead was recorded. The plaintiffs defaulted in the payment of the note and the defendant deposited the note and trust deed with the trustee with a written declaration of default and a demand for the sale of the property. The trustee recorded the notice and election to sell, but before any further proceedings were taken thereon the defendant cancelled those instruments, abandoned the proceedings to exercise the power of sale under the trust deed, and in September, 1937, brought an action to foreclose the deed of trust pursuant to section 725a of the Code of Civil Procedure. A judgment of foreclosure was affirmed on appeal in February, 1940. (*Hamilton* v. *Carpenter*, 15 Cal.2d 130 [98 P.2d 1027]; certiorari denied 311 U.S. 656 [61 S.Ct. 10, 85 L.Ed. 420]; 312 U.S. 705 [61 S.Ct. 825, 85 L.Ed. 1138].) Thereafter, on December 3, 1940, the commissioner's sale on foreclosure was held, at which time the defendant purchased the property for $10,-757.59 and received a certificate of sale which was duly recorded. The plaintiffs did not redeem and at the expiration of the period of redemption, on December 5, 1941, the commissioner's deed was delivered and duly recorded. On December 6th the court issued a writ of assistance and the defendant was placed in possession of the property.

In September, 1941, the plaintiffs moved to set aside the sale on the ground of alleged irregularities. The court denied the motion and the plaintiffs appealed. On June 2, 1942, the order was affirmed in *Hamilton* v. *Carpenter*, 52 Cal.App.2d 447 [126 P.2d 395]. A purported appeal from an order denying the plaintiffs' motion to strike an affidavit filed by the defendant in opposition to the motion to set aside the sale was dismissed. (*Hamilton* v. *Carpenter*, 52 Cal.App.2d

449 [126 P.2d 397].) The plaintiffs then brought two actions, one to set aside the judgment decreeing foreclosure of the trust deed as a mortgage and ordering sale of the property, and the other to set aside the sale. The defendant had judgment in each action, and each judgment was affirmed. (*Carpenter* v. *Hamilton*, 59 Cal.App.2d 146 and 149 [138 P.2d 353, 355].)

Thus, after the judgment of foreclosure became final, the plaintiffs attempted to set aside the sale on motion; they brought an action to set aside the judgment of foreclosure; they brought an action to set aside the sale; and failing in all of the foregoing they reassert the validity of their title in the present action to quiet title by attempting again to establish the invalidity of the foreclosure sale. The ground of the present claim of invalidity is stated to be a noncompliance with section 1245 of the Civil Code providing for the appointment of persons to appraise the value of the homestead upon execution of the judgment of foreclosure. It is the contention of the plaintiffs that the failure of the defendant to pursue the provisions of that section in the execution of the foreclosure judgment and order of sale entitles them to prevail in the present action.

Section 1245 provides: "When an execution for the enforcement of a judgment obtained in a case not within the classes enumerated in section 1241 is levied upon the homestead, the judgment creditor may at any time within sixty days thereafter apply to the superior court of the county in which the homestead is situated for the appointment of persons to appraise the value thereof, and if such application shall not be made within sixty days after the levy of such execution the lien of the execution shall cease at the expiration of said period, and no execution based upon the same judgment shall thereafter be levied upon the homestead." Succeeding sections provide for the appointment of appraisers, appraisal, setting off a portion of the property to the claimant if the appraised value exceeds the homestead exemption and the property be divisible, or sale for an amount over the exemption value and the division of the proceeds to the homestead claimant and in satisfaction of the execution.

Section 1241 provides that the "homestead is subject to execution or forced sale in satisfaction of judgments obtained:

. . . . 4. On debts secured by mortgages on the premises, executed and recorded before the declaration of homestead was filed for record.''

The question thus presented by the plaintiffs is whether a judgment on a debt secured by a trust deed executed and recorded before the declaration of homestead was filed for record, and foreclosed as a mortgage pursuant to said section 725a, is within the classification of judgments enumerated in section 1241, subdivision 4. The plaintiffs concede that if the sale had taken place under the trust deed power of sale the question would not have arisen, because in that event the entire interest of the plaintiffs in the property would have been subject to the exercise of the power. But they say that because the defendant elected to proceed by action to foreclose the deed of trust as in the case of a mortgage, his judgment was not within the exception of section 1241 which expressly applied to a mortgage, and was therefore governed by sections 1245 et seq. of the Civil Code.

Whether the word ''mortgage'' as used in section 1241, subdivision 4 should be construed to include a deed of trust when foreclosed as a mortgage, is unnecessary to be determined in the present case. ■ The trial court concluded that all of the plaintiffs' present claims were decided adversely to them by the previous judgments, orders and decisions. Reference to that litigation demonstrates that the plaintiffs are precluded from presenting any further claims of invalidity of the commissioner's sale of the property. All possible issues of irregularity in the foreclosure action and in the execution sale must be deemed to have been decided adversely to them by the prior decisions wherein the foreclosure judgment was affirmed and the commissioner's sale held valid. The only case which need be cited as authority is *Hamilton* v. *Carpenter*, 15 Cal.2d 130 (*supra*), wherein this court applied the rule that parties may not litigate a controversy piecemeal and arrived at the conclusion that a prior decision in *Carpenter* v. *Hamilton*, 18 Cal.App.2d 69 [62 P.2d 1397], was res judicata and foreclosed the plaintiffs from relitigating issues of fraud and misrepresentation alleged to have been made by the defendant in the sale of the property. The same result applies equally to other contentions of irregularity made by the plaintiffs, some of which were specifically disposed of adversely to them in the prior decisions. In effect, the plaintiffs attempt to relitigate in the form of a quiet

title action the questions of the validity of the foreclosure action and the commissioner's sale which heretofore have been decided adversely to them. Having failed in the prior actions they cannot prevail here.

The question remains whether the defendant, purchaser at the execution sale, was entitled to recover from the plaintiffs the value of the use and occupation of the property during the period of redemption. The plaintiffs were in possession and occupied the property during that period. The defendant by his cross-complaint sought to recover the value of such use and occupation relying on the provisions of section 707 of the Code of Civil Procedure. The plaintiffs filed a demurrer which was overruled. The trial court granted the relief, fixed the reasonable value of the use and occupation at $1,080, and rendered judgment for the defendant accordingly.

The plaintiffs contend that the cross-complaint was improper in the present action and that their demurrer should have been sustained. There was no error in the ruling and order. The complaint alleged the declaration of homestead, the foreclosure of the trust deed, and the commissioner's sale which was claimed to be void. The cross-complaint set up matter for affirmative relief which bore a necessary relationship to and affected the property concerned in the action, and the fact that the relief sought was distinct from that demanded by the plaintiffs was immaterial. (Code Civ. Proc., § 442; *California Trust Co.* v. *Cohn*, 214 Cal. 619 [7 P.2d 297]; *H. & J. Mabury Co.* v. *Bryant*, 9 Cal.2d 586 [71 P.2d 1111].) There is no sufficient showing that the evidence does not support the finding as to the amount of the reasonable rental value of the premises.

The plaintiffs' right of possession during the period of redemption is not expressly granted by statute. It is said to be conceded thereby. (*First National etc. Bank* v. *Staley,* 219 Cal. 225 [25 P.2d 982], and cases cited p. 227; *Petersen* v. *Jurras,* 2 Cal.2d 253 [40 P.2d 257].) The plaintiffs contend, however, that although they occupied the premises in the exercise of that right, they were not tenants in possession as contemplated by section 707 of the Code of Civil Procedure and were therefore not liable to the defendant for the value of their use and occupation. That section provides that until redemption the purchaser at an execution sale is

entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof, but that any rents or profits received by the purchaser are to be credited on the money to be paid in redeeming the property from the sale.

The plaintiffs discuss asserted differences between mortgages and deeds of trust, but any such differences are not here pertinent. The plaintiffs, whether mortgagors, trustors, or otherwise the debtors of the defendant, are judgment debtors within the meaning of the code sections relating to executions and redemptions, and their rights are governed thereby.

It must be conceded that the right of the purchaser at an execution sale to the rents and profits of the property enures to him by virtue of his succession to the debtor's right, title and interest (Code Civ. Proc., § 700), and has been declared by the courts of this state on numerous occasions. (*Pollard* v. *Harlow*, 138 Cal. 390 [71 P. 454, 648]; *Shintaffer* v. *Bank of Italy*, 216 Cal. 243 [13 P.2d 668]; *First National etc. Bank* v. *Staley, supra; Petersen* v. *Jurras, supra; Munzinger* v. *Caffrey*, 49 Cal.App.2d 180 [121 P.2d 13]; 18 Cal. Jur. 612 et seq. and cases cited.) The procedure which may be pursued in the exercise of that right need not be discussed. (See *First National etc. Bank* v. *Staley, supra*.) It must also be conceded that tenants of the judgment debtor are tenants in possession and liable to the purchaser for the rents and profits. Here we are concerned with the question whether a judgment debtor, occupying the property during the period of redemption, is also a tenant in possession within the meaning of the section.

Prior to 1870 section 236 of the Practice Act provided that the purchaser at an execution sale was entitled pending redemption to receive from the tenant in possession the rents of the property sold or the value of its use and occupation. In that year there was added to section 236 the provision for crediting rents received by the purchaser against the amount of any money paid on redemption. The courts interpreted the purchaser's right under section 236 prior to the amendment as a right to recover from the tenant in possession the rents and profits or the value of the use and occupation without any liability to account therefor in the event of redemption. (*Reynolds* v. *Lathrop*, 7 Cal. 43; *Kline* v. *Chase*,

17 Cal. 596; *Knight* v. *Truett,* 18 Cal. 113; *Page* v. *Rogers,* 31 Cal. 293, 294.) In *Reynolds* v. *Lathrop, supra,* (1857) the question whether the words "tenant in possession" were intended to refer also to the judgment debtor so as to make him liable for the value of the use and occupation was expressly left open. But in *Harris* v. *Reynolds* (1859), 13 Cal. 514, 517 [73 Am.Dec. 600], it was determined that the words "tenant in possession" meant the judgment debtor as well as his lessee. The court said: "A privilege or redemption is given to the judgment debtor; but it is uncertain whether he will exercise it. Time is not given for the purpose of enabling the debtor to make a profit out of the estate, but for the purpose of enabling him to raise the money to redeem. . . .

"The phrase 'the tenant in possession,' is a generic term, intended to designate the class of persons from whom the purchaser was to receive the rents. The language is not that, when a tenant of the debtor is in possession, the tenant shall pay the purchaser, or that the debtor, when in possession, shall not; but the phraseology [was] designed, evidently, to fix a general right, applying to all cases of tenancy, for none are excluded.

"It is not very easy to see the reason for such a distinction as that contended for. It would give but little help to the purchaser, since the debtor, on the eve of judgment, might change a possession of tenancy, and take possession personally; or change the terms of tenancy so as to make of little or no value the purchaser's right; and why should a debtor be any more inhibited from getting profit from rent than getting profit from use . . . ? The definition of 'tenant in possession' embraces, within the natural and usual meaning of the words, a judgment debtor as well as his lessee. The owner in fee in possession is no less, in legal contemplation, a tenant, than the man who occupies under him. The definition of tenant is, 'one that holds or possesses lands or tenements by any kind of title, either in fee, for life, years, or at will.' "

The holding in *Harris* v. *Reynolds* was followed in *Knight* v. *Truett* (1861), *supra,* where the judgment debtor occupied the premises by his agent; in *Hill* v. *Taylor* (1863), 22 Cal. 191, where the judgment debtor remained in possession and occupancy of a mining claim during the period of redemption; in *Walls* v. *Walker* (1869), 37 Cal. 424, 432 [99 Am. Dec.

290], where the rule was held applicable to the administrator of an estate. The opinion in *Harris* v. *Reynolds* was quoted from, and the holding therein approved and followed in *Walker* v. *McCusker* (1887), 71 Cal. 594 [12 P. 723], in applying the provisions of section 707 Code of Civil Procedure. The court there determined that the successor of the mortgagor in possession was liable to the purchaser for the value of the use and occupation. The same principle was recognized in *Clarke* v. *Cobb* (1898), 121 Cal. 595, 599 [54 P. 74]. The case of *Walker* v. *McCusker* was cited in the more recent cases of *First National etc. Bank* v. *Staley, supra,* and *Munzinger* v. *Caffrey, supra,* without questioning the holding. It thus appears that in no case in this state since the decisions in *Harris* v. *Reynolds* and *Walker* v. *McCusker,* has the liability of the judgment debtor to the purchaser for the value of the use and occupation been questioned and that no distinction in that rule has been made because of the 1870 amendment. (See, also, 11 Cal.Jur. 137.)

The plaintiffs place great reliance on the case of *Local Realty Co.* v. *Lindquist* (Dec. 1938), 96 Utah 297 [85 P.2d 770]. That case involved facts and statutory provisions similar to those prevailing in this state since 1870. The court there attempted to distinguish the rule of *Harris* v. *Reynolds* and *Walker* v. *McCusker,* as being based on the statute as it read prior to 1870. By a three to two decision the Utah court held that during the period of redemption the purchaser was entitled to receive the rents and profits from the lessee of the judgment debtor, but that when the judgment debtor remained in occupancy he incurred no liability to the purchaser for the value of the use and occupation. That decision appears to stand alone in its construction of a statutory provision similar to section 707 of the Code of Civil Procedure. The dissenting opinion denominates the majority view as "judicial wishful thinking," and discloses the fallacies there employed. Particularly it stresses that the majority distinction of the cases of *Harris* v. *Reynolds* and *Walker* v. *McCusker,* the latter decided seventeen years after the 1870 amendment, could not exist, inasmuch as that amendment did not change the conditions of the debtor's possession but served only to charge the rents collected by the purchaser against the redemption money to be paid. The majority holding in that case was rejected, and the reasoning of the cases of *Harris* v. *Reynolds* and *Walker* v. *McCusker* was ac-

cepted and applied, in the later Idaho case of *Caldwell* v. *Thiessen* (July 1939), 60 Idaho 515 [92 P.2d 1047]. The contention of the plaintiffs here, that a judgment debtor remaining in possession as of right is entitled to all the benefits accruing from that possession, was likewise rejected in *Geo. B. Clifford & Co.* v. *Henry* (1918), 40 N.D. 604 [169 N.W. 508], although a statutory provision in North Dakota expressly gave the mortgagor the right to possession during the period of redemption. The court there followed the case of *Harris* v. *Reynolds* in construing a statute similar to section 707, saying, ". . . but that section (giving the mortgagor the right to possession) does not fix the terms of occupancy." In 1919 the Legislature of North Dakota amended the law to provide that the mortgagor should be entitled to both the possession and the rents, use and benefit of the property until the expiration of the period of redemption. This was recognized as a complete reversal of legislative policy. (*Farm Mortg. Loan Co.* v. *Pettet,* 51 N.D. 491 [200 N.W. 497, 36 A.L.R. 598].) The cases of *Harris* v. *Reynolds* and *Walker* v. *McCusker* were also followed in *Citizens' Nat. Bank of Laurel* v. *Western Loan & Bldg. Co.* (1922), 64 Mont. 40 [208 P. 893]. In that case the court noted the fact that in 1921, subsequent to the commencement of the proceedings, the Montana Legislature had amended the statute to make an exception in favor of the execution debtor who personally occupied the premises as a home for himself and family.

It must therefore be concluded that in the absence of a legislative declaration to the contrary, said section 707 must again be applied as it has heretofore been construed by the courts of this state; and that the trial court correctly determined the plaintiffs' liability as tenants in possession during the period of redemption.

The judgment is affirmed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellants' petition for a rehearing was denied May 4, 1944.