[Civ. No. 5576. Fourth Dist. Aug. 27, 1957.]

SHERMAN L. CHRISTENSEN, Appellant, v. JACOB FORST et al., Respondents.

[Civ. No. 5577. Fourth Dist. Aug. 27, 1957.]

SHERMAN L. CHRISTENSEN, Appellant, v. CHARLES I. DERIGO et al., Respondents.

Hightower, Gregg & Garland and David M. Garland for Appellant.

Jacob Forst, in pro. per., and Charles Kaplan for Respondents.

BARNARD, P. J.—On June 16, 1954, a judgment was entered in the Long Beach Municipal Court in favor of Joe Gideon and against John Goldin. A writ of execution was issued, and on November 29 the constable levied upon all the right, title and interest of John Goldin, "standing in the name of Jacob Forst," in and to certain real property in Huntington Beach. On January 5, 1955, the constable sold "said

interest'' in said property to Sherman L. Christensen on an execution sale. On December 13, 1955, Goldin and one of his successors in interest redeemed said property by paying $3,888, which was the correct amount required for the redemption of the property. Christensen refused to accept the money paid and it was deposited in the constable's trust fund in the office of the county treasurer, where it remains awaiting the result of this litigation.

On January 13, 1956, Christensen filed two actions in the superior court of Orange County. One of these actions was for declaratory relief and to quiet title, and the other sought to recover from the defendants the rents, issues and profits accruing from the property during the period from January 5, 1955, the date of the execution sale, to December 13, 1955, the date of the redemption. It was alleged in that complaint that on July 16, 1954, the defendant Jacob Forst had executed an oil and gas lease to certain other defendants who had assigned part of their interest to the defendant Abercalif Petroleums, Ltd., and that there had been various other assignments of interests in said oil and gas lease; that since January 5, 1955, oil and gas have been and are being produced from said land by the defendants in possession, the amounts and quantity being unknown to the plaintiff; and that by reason of his certificate of sale on execution, and pursuant to section 707 of the Code of Civil Procedure, the plaintiff as purchaser on execution sale is entitled to receive from the defendants the rents, issues and profits of the property sold from and after the date of sale. The prayer was for rents, issues and profits in the sum of $25,000, or in lieu thereof damages in said amount. The main defendants Forst, Goldin and some of the successors in interest of Goldin filed an answer, and the Abercalif Petroleums, Ltd. filed a separate answer on April 30, 1956, alleging that they presently held the sum of $1,651.93 as oil royalties payable under said oil and gas lease; that they were uncertain as to who is entitled thereto as between the plaintiff and the defendants; and that they intended to hold said funds pending the outcome of this action, or to deposit said funds with the court if ordered to do so.

The two actions were consolidated for trial. The court found, among other things, that John Goldin was the holder of the fee title to this property and conveyed the same to Jacob Forst, as trustee, on May 13, 1954; that Goldin, as agent for Forst, entered into an oil lease dated July 16, 1954; that Jacob Forst, trustee, conveyed the property to Bernard Forst, the

deed being recorded on November 4, 1954; that a levy was made in the case of Gideon v. Goldin and on January 5, 1955, a sale was made of Goldin's interest in said property standing in the name of Jacob Forst; that at the time of said levy the title to said real property was of record in the name of Bernard Forst and not of Jacob Forst; that the levy made, and the sale made, contained no notice of any possible oil interest owned by John Goldin or the name of any possible party who might be owning or holding such oil interest for said Goldin, or the name of any lessee of an oil lease; that no notice of such levy and sale was ever given to Bernard Forst or Jacob Forst or the Abercalif Petroleums, Ltd., or any new or unknown defendants whom the plaintiff might wish to bring into these actions; that several other defendants have acquired and own certain interests in this real property and in the oil lease; that John Goldin and defendant Martinson made a tender of the amount due and attempted to redeem the property in October, 1955, and in connection therewith a proceeding was had in the Long Beach Municipal Court in which the court held the amount of the tender to be sufficient, and ordered a redemption; that on December 13, 1955, the defendant Martinson tendered to the constable the sum of $3,888, being the correct amount required for the redemption of the property, together with a quitclaim deed from John Goldin to said Martinson, a verified notice and request for the issuance of a certificate of redemption, and an affidavit stating certain facts; that the constable executed and delivered to the defendant Martinson a certificate of redemption of said property; that Martinson was then and now is a successor in interest of John Goldin; that the constable tendered the $3,888 which had been paid to the plaintiff; that the plaintiff returned it to the constable, and said amount is now on deposit in the constable's trust fund in the county treasury; that the defendants John Goldin and Martinson did and have redeemed, and are entitled to redeem, the property in question; and that the plaintiff as purchaser at the execution sale is not entitled to any rents, issues or profits of said property from the date of levy or sale on execution to the date of redemption. Judgment was entered decreeing that the defendants John Goldin and Martinson have redeemed and are entitled to redeem the property involved, ordering the constable to deliver the sum of $3,888 to the plaintiff as and for the redemption of said real property, and decreeing that the plaintiff is not entitled to any rents, issues or profits or oil royalties of said real

property, or to any accounting therefor or to any declaration of rights other than as above set forth.

A judgment was entered in each of the two actions and the plaintiff appealed from both judgments. These appeals have been consolidated and are presented on the clerk's transcripts and on one set of briefs. The appeals were taken only from that part of the judgments decreeing that the plaintiff is not entitled to any rents, issues, profits or oil royalties accruing during the period in question. The plaintiff now concedes that a valid redemption of the property was made.

The appellant contends that the purchaser at an execution sale acquires all the right, title and interest of the judgment-debtor; that the rights of the execution purchaser are substantially the same as though the debtor had voluntarily transferred the property to him for value; that while the effect of an execution sale is terminated by a valid redemption, such redemption does not affect the interest of the execution purchaser from the date of the execution sale to the date of the redemption; that the effect of section 703 of the Code of Civil Procedure is that the execution purchaser is divested of his interest in the property only at the time the redemption is effected; that under the first sentence of section 707 of that code the purchaser is entitled to receive the rents of the property sold from the time of the sale until a redemption is made; that the purpose of the other provisions of section 707, providing that the amounts of rents and profit thus received shall be a credit upon the redemption money to be paid, is to prevent a double recovery by the execution purchaser; that this provision necessarily applies to a situation where the rents or profits constitute a lesser sum than the redemption money to be paid, but cannot apply to a situation where the rents or profits constitute a greater sum than the amount needed for redemption; and that "this credit arrangement does not affect the rule that the execution purchaser is entitled to the rents, issues and profits after the sale and before the redemption."

The appellant relies on the early cases of *Harris* v. *Reynolds*, 13 Cal. 514 [73 Am.Dec. 600] and *Kline* v. *Chase*, 17 Cal. 596 as being controlling in the instant case. Those cases were decided under section 236 of the Practice Act, which was practically identical with the first sentence of the present section 707 of the Code of Civil Procedure. The first sentence of section 707, so far as material here, reads: "The purchaser, from the time of the sale until a redemption, . . . is entitled

to receive, from the tenant in possession, the rents of the property sold, or the value of the use and occupation thereof.'' The next sentence of section 707 modifies the first sentence by providing that when any such rents or profits have been received by the purchaser preceding such redemption the amounts thus received ''shall be a credit upon the redemption money to be paid.'' It is then provided that the redemptioner may, before the expiration of the redemption period, demand or compel an accounting as to the amounts thus received and that the redemption period shall be extended until after such an accounting is made. If the purpose of the provisions of section 707 which follow the first sentence is to prevent a double recovery by the execution purchaser, where the rents or profits are less than the amount required to redeem, it is unbelievable that it was thereby intended to permit such a double recovery if the rentals happened to be greater than the amount required for redemption.

As the court stated in *Carpenter* v. *Hamilton,* 24 Cal.2d 95 [147 P.2d 563, 153 A.L.R. 733]:

''Prior to 1870 section 236 of the Practice Act provided that the purchaser at an execution sale was entitled pending redemption to receive from the tenant in possession the rents of the property sold or the value of its use and occupation. In that year there was added to section 236 the provision for crediting rents received by the purchaser against the amount of any money paid on redemption. The courts interpreted the purchaser's right under section 236 prior to the amendment as a right to recover from the tenant in possession the rents and profits or the value of the use and occupation without any liability to account therefor in the event of redemption.'' (Citing *Kline* v. *Chase,* 17 Cal. 596, *Harris* v. *Reynolds,* 13 Cal. 514 [73 Am.Dec. 600], and other cases.)

Since the amendment of section 236 of the Practice Act in 1870 and the adoption of the present section 707 of the Code of Civil Procedure in 1872, there have been a number of cases in this state in which it has been held that the execution purchaser is entitled to collect the rents during the redemption period, or in which the right of the purchaser to collect such rents where no redemption has been made has been upheld. We are aware of no case decided since those changes were made, in which it has been held that after the property has been redeemed the purchaser was entitled to retain any rentals received prior to the redemption which were in excess of the amount needed to redeem the property, or in which it has

been held or intimated that such a purchaser has a right to collect any such rent after the property has been redeemed and after he had been paid the full amount to which he was entitled under the execution sale. The purchaser at an execution sale takes title to the property subject to the right of others to redeem the property by paying him the full amount of his purchase price, with interest and certain expenses, and he is justly entitled to no more.

While section 707 provides that the purchaser may receive from the tenant the rents during this ·period, the further provision that when any such rents or profits have been received the amounts thereof shall be credited upon the redemption money to be paid, would reasonably appear to disclose an intention that the purchaser should not be entitled to retain any additional amounts after a redemption has been made. In *Clarke* v. *Cobb*, 121 Cal. 595 [54 P. 74], where no redemption was made, the court held that it would be unjust to permit the purchaser to collect the full amount of an annual rental which became payable during the redemption period, and that this rental should be prorated between the parties in proportion to the respective times involved. In a dissenting opinion based on the ground that under the first sentence of section 707 the purchaser was entitled to receive the entire rents, some attention was called to the other provisions of section 707 by stating that while the purchaser was thus entitled to receive all of these rents this was "subject to his obligation to refund the amount he may receive in case the judgment-debtor shall redeem from the sale."

 The purpose of the statutes permitting property to be sold at an execution sale, in order to make a judgment effective, is to enable the creditor to recover the amount to which he is entitled under the judgment. The purpose of the statutes permitting a redemption of the property within a limited time is to protect the debtor and enable him to save his property by paying the amount for which the property was sold, with interest and expenses. In view of these purposes it would be unreasonable to interpret these statutes as intended to permit the unjust result of allowing a judgment-creditor or a purchaser to retain or to collect an additional amount and thus make an additional profit out of the execution sale. It may be assumed in support of the judgment that this property was sold for the full amount of the judgment debt, and after that debt has been fully paid in a manner permitted by law it would be unjust to subject the judgment-debtor and

his successors in interest to a further payment the claim for which arises through and is based upon the enforcement of that same judgment. The earlier decisions under section 236 of the old Practice Act would have permitted such a result, even where a redemption was made. It may well be that the legislature was not unmindful of that situation when it amended former section 236 and adopted section 707, which has stood without amendment for many years.

It is not without significance that the first sentence of section 707 provides that the purchaser is entitled to ''receive'' the rents from the tenant during the redemption period, rather than using words indicating that he is entitled to retain such rents in any event and regardless of whether or not a redemption is made. ■ The provision which immediately follows, that any rents thus received shall be credited upon the redemption money to be paid, with the further provision for an accounting, rather clearly indicates an intention to provide that the purchaser may retain the rents he is entitled to receive only so far as they are used to reduce the amount that must be paid to redeem the property from the sale. This is in accord with the purpose and intent of the entire statutory provisions for such execution sales, and for a redemption of the property by paying in full the amount for which the property was sold with the incidental costs.

■ In the instant case, the purchaser did not receive any rents or profits during the redemption period, there was a timely redemption of the property, and the purchaser has received or under the terms of the judgment will receive a full reimbursement. That is all to which he is justly entitled. After the property has been thus redeemed and full payment made to the purchaser, it would be unreasonable and unjust to hold that such a purchaser is thereafter entitled to sue for and recover rents or profit which he had not received during the redemption period. This would seem especially true where, as here, these profits were produced through the efforts of the judgment-debtor and his successors in interest, and when, under section 703 of the Code of Civil Procedure, the ''effect'' of the sale has been terminated and they are entitled to be restored to their original position. Neither the statutes nor any previous decisions compel such a conclusion or result as that contended for by the appellant. We hold, therefore, that under these circumstances the appellant is not entitled to recover the rentals or profits attributable to this property during the period here in question.

It is unnecessary to consider the respondents' further contention that the judgments are sustainable on the ground that, under the facts found, the execution sale to the appellant was void because of a failure to comply with the statutes governing the making of such a levy.

The judgments are affirmed.

Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 23, 1957.