[Civ. No. 10823. Fourth Dist., Div. One. Dec. 20, 1971.]

IRWIN B. NEWHOUSE et al.,
Plaintiffs, Cross-defendants and Respondents, v.
GILBERT B. UPCHURCH et al.,
Defendants, Cross-complainants and Appellants.

**COUNSEL**

Robert L. Sassone for Defendants, Cross-complainants and Appellants.

Robert H. Kuehn for Plaintiffs, Cross-defendants and Respondents.

## Opinion

**WHELAN, Acting P. J.**—Gilbert B. Upchurch and Elizabeth Upchurch (Upchurch) have appealed from an order denying their motion to have the court find Upchurch had effected a redemption of rights under an installment contract for the purchase of land in accordance with the court's prior decree permitting such redemption.

The appeal is from a minute order made on September 21, 1970, subsequent to the judgment entered June 1, 1970. It is appealable as a special order made after judgment since it affects the operation of the judgment. (Code Civ. Proc., § 904.1.) There was also an appeal from an order denying a motion for new trial, which is a nonappealable order, and that appeal is dismissed. The motion for new trial was not made within the time allowed by Code of Civil Procedure section 659.

On January 24, 1966, Upchurch executed a contract for the purchase of an improved lot in Orange County from Stanville Development Company. The price was $20,500, to be paid in monthly installments of $170 including interest, commencing on February 20, 1966. Thirty-five dollars of the monthly payment was to be held in trust for taxes and insurance; and Stanville was to make payments on a first trust deed note of $18,000, with which the property had been encumbered.

On April 8, 1969, Stanville commenced the pending action to quiet title to the property. The complaint and its incorporated documents claimed that Upchurch had failed to make payments for the months of January through November 1968, amounting to $1,870; that by a letter of December 5, 1968 Stanville gave notice of such default and elected to convert the relationship of the parties from that of seller and buyer to that of landlord and tenant in accordance with a provision of the sales contract; a 30-day notice to quit accompanied the letter of December 5; the monthly payments had never been made promptly; when made they were often for less than $170.

The complaint alleged that as of December 5, 1968, $6,320 had been due under the contract; $3,395 had been paid; the balance of the accrued installments was $2,925; there was a contract provision calling for a $1-per-day charge for a payment delinquent more than 10 days; $920 for 920 days from May 30, 1966 to December 5, 1968, had become owing under that provision; Upchurch had made a payment of $175 on January 8, 1969, which had been credited to rent from December 6, 1968, to January 6, 1969.

The prayer of the complaint was for a decree declaring a forfeiture of the contract; quieting title; for the amount of the alleged deficiency on December 5, 1968 of $2,925; late payment charges of $1-per-day from May 30, 1966 to December 5, 1968; $5.67 per day from January 7, 1969, for use of the property; and for attorney fees.

The answer, filed April 18, 1969, denied that as of December 5, 1968 payments made had totalled less than $6,585; admitted there had been a delinquency in payments from May 1966 through May 12, 1967. It alleged the contract failed to set forth the matters required by Civil Code section 2985.5.

Upchurch filed a cross-complaint against Stanville and Carter Outdoor Advertising Company (Carter) alleging that in November 1967 Stanville had entered into a lease with Carter as lessee of a portion of the property covered by the contract without the knowledge or consent of Upchurch; upon discovery of that fact, Upchurch sought to affirm the lease for his own benefit and to collect the rent; Stanville, however, claimed it had a right to the rent and about December 14, 1967, requested Carter to withhold the rent until the matter might be adjudicated; Upchurch on May 27, 1968, in writing, tendered to Stanville all sums then accrued and that would accrue under the lease, to apply the same on the sales contract; Stanville refused the tender; Carter has used and occupied a portion of the premises since November 7, 1967; the rent of $150 per month is owing to Upchurch for the entire period, for a total of $2,550, and to accrue in future.

The cross-complaint asked for declaratory relief as to the following: whether Upchurch or Stanville is entitled to the rents from Carter; whether the unpaid principal balance on the contract is $18,304.40 as contended by Upchurch, or a greater sum as contended by Stanville; whether Upchurch is entitled to an accounting for $1,365 paid into the impound account as of April 20, 1969, which Stanville denies Upchurch has a right to; whether Stanville may collect a late charge of $1 per day as it contends it has a right to do.

Stanville's answer to the cross-complaint admitted the making of the lease; denied all else.

Carter filed an answer to the cross-complaint on November 13, 1969. It admitted the lease had been made on October 9, 1967; on December 14, 1967 Stanville suggested the rents be held; Carter held $2,550, being the rents to April 9, 1969; Carter asked that the claimants interplead.

On May 5, 1970 the parties were in court for trial. At that time Carter held $4,500 as to which its request for interpleading was granted, and from which the court allowed it $770 as attorney fees.

The minutes of that date show the following stipulation: "Stipulation of counsel, approved by court, for judgment for plaintiffs against defendants Upchurch in a sum to be determined by plaintiff's accountant, with a right of redemption reserved to defendants until July 6, 1970. After deduction of the $770.00 of the monies interpled, the remainder is ordered payable to plaintiffs to credit to defendants arrearage."

On May 14, 1970, counsel for Stanville wrote to counsel for Upchurch, stating: "In accordance with our agreement, I will be preparing a Quiet Title Decree and will use the figures set forth on the accountant's affidavit, and if there is no disagreement I will use those figures which are as of May 20, 1970. I will assume then that your client will make the payment due in the sum of $170.00 on June 20, 1970, and bring the other arrearages up to date:

|  |  | 5163.40 |
|---|---|---|
|  | 4500.00 |  |
| less | 770.00 | 3730.00 |
|  |  | 1433.40" |

The judgment signed May 28, 1970 recited a stipulation as follows:

1. At the commencement of the action title to the real property was vested in Stanville.

2. Upchurch breached the purchase contract dated January 20, 1966.

3. Upchurch is in arrears $5,077.20 on the purchase contract, is in default and has breached the contract.

4. Judgment should be awarded Stanville quieting title to the real property in Stanville.

5. Upchurch shall have the right to redeem his rights under the contract to purchase by paying arrearages totaling $5,077.20 at any time up to and including July 6, 1970; that the sum of $3,730 held by Carter be paid to Stanville and applied on the arrearages under the contract.

The judgment was in accordance with the sitpulation as recited therein; the amount Upchurch should pay for redemption was set at $1,347.20.

Nothing was said as to which party was entitled to receive future rent payments commencing May 9, 1970.

On June 19, 1970, Upchurch mailed a check for $170 to Stanville. That check as discussed hereafter was presented to and paid by the drawee bank on July 10, 1970, and a cashier's check issued as payment.

On July 2, 1970, Upchurch wrote a check for $1,347.20 in favor of Stanville; it was posted in an envelope postmarked July 4, 1970, to Stanville's attorney, who received it on July 6.

From July 3, to July 10, 1970, there was a balance in the Upchurch account of $1,413.69.

On July 10 the check of $170 was presented and paid; that reduced the balance to $1,233.69. The same date the check for $1,347.20 was presented and was marked "NSF." It had been endorsed with a request for issuance of a cashier's check.

The next transaction was a deposit of $310.20 on July 13, bringing the balance to $1,527.64; on July 15 the account was charged $1,347.20, for which Upchurch obtained a cashier's check in favor of Stanville. Upchurch delivered it to Charles Sandlieng in the Stanville office, who gave Upchurch a receipt for it.

Upchurch's attorney received a letter dated July 13 from Stanville's attorney that the check of $1,347.20 had been received on July 6 and presented on July 10, and that the condition of redemption had not been met.

Upchurch learned on July 13 of the nonpayment of the check; on the same day he made the deposit which brought the account to $1,527.54; on July 15 he obtained the cashier's check of $1,347.20 and took it to the Stanville office where he had previously made payments on the contract.

July 6 and 13 fell on Monday; July 10 on Friday.

All the foregoing appears from the undenied declarations of Upchurch, his attorney or the attorney for Stanville. Supporting documents are attached to the declarations in the superior court file which has been brought before us.

On July 17, 1970, counsel for Upchurch noticed a series of motions, including one entitled "for an order for entry of satisfaction of judgment and redemption."

In addition to the facts already recited, Upchurch's declaration in support of his motion contained the following: "I did not make a cashiers check for the balance due according to the Judgment on July 6, 1970, since I had previously given plaintiffs personal checks for amounts up to or in excess of $1,000.00, I believed July 3, 1970 would be a bank holiday and I did not have the money until after the bank closed on July 2, 1970. I checked with the bank to determine my balance, and as a result of that con-

versation with the bank, I deposited $281.90 at about 10:00 A.M. on July 3, 1970. I had been told that this would bring my balance to in excess of $1,440.00 when all the checks I believed to be outstanding would have cleared."

We deem the motion and the notice thereof as sufficient to invoke the court's power to determine whether a redemption had been made within the terms of the judgment. The motion was heard and denied on September 21, 1970.

There is a hearsay account in the declaration of Upchurch's attorney as to the course of events at the bank on July 10. The trial court could properly ignore it as we do.

It remains true that on July 6, 1970, and during the interval until the check for $170 was cashed on July 10, there was in the Upchurch account a balance sufficient to cover the check of $1,347.20. There are two possibilities: that the $1,347.20 check was presented first and the bank erred in marking it "NSF"; or the check of $170 which had been held, inferably, since June 20, 1970, was presented first, either with or without some prior information as to the condtion of the Upchurch account; when that was cashed, the balance was short of the amount necessary to cover the larger check.

Probably only Stanville would be able to say which of the alternative possibilities coincided with the facts.

If it were the second, it might be said Stanville, by realizing in cash the check tendered in payment of the June 20 installment on the contract, recognized the contract to be in effect independently of the right to redeem. When that check was presented and paid, Stanville still had the larger check which had been delivered to his attorney within the permitted time.

Courts of equity have been accustomed to grant relief under appropriate circumstances where a redemptioner has failed to make a statutory redemption within the prescribed period. (*Benson* v. *Bunting,* 127 Cal. 532 [59 P. 991].)

A distinction has been drawn between such cases and those in which the court of equity has permitted a redemption upon conditions fixed by the court's decree. (*Bunting* v. *Haskell,* 152 Cal. 426 [93 P. 110].)

However, the same equitable power has been exercised to find a redemption has been effected though not in strict compliance with the court's de-

cree. (*Kofoed* v. *Gordon,* 122 Cal. 314 [54 P. 1115]; *Los Angeles A. T. Co.* v. *Superior Court,* 94 Cal.App. 433, 440 [271 P. 363]; *Leslie* v. *Federal Finance Co.,* 14 Cal.2d 73, 80-81 [92 P.2d 906].) In *Kofoed* v. *Gordon, supra,* the court said, at pages 324-325: "[W]hen a qualified redemptioner makes an attempt in good faith to redeem within the proper time, and is only prevented from perfecting a valid redemption by an innocent mistake, equity will relieve him from the consequences of such mistake, and allow him to perfect the redemption. (*Pownall* v. *Hall,* 45 Cal. 193.) That was a case in which the redemptioner had by mistake given along with the balance of the redemption money a counterfeit legal tender note for one hundred dollars. His payment was, therefore, *pro tanto* no payment, and by strict law the redemption was not effected; but his attempt in good faith to redeem, which was only prevented by his innocent mistake, was held to give him a right in equity to perfect the redemption by making up the deficiency."

The decree in the case at bench purports to be a final judgment. Under some of the authorities cited, that circumstance would not prevent the exercise of the court's equitable powers. We do not pass upon the question whether the decree was a final judgment; we point out, however, that although it was the result of stipulation it failed to dispose of issues drawn by the pleadings some of which should have been determined if there were to be a redemption. For example, the question which of the parties was entitled to future rents from Carter was such an issue.

We recognize that the finality of the judgment is not affected by the fact there was necessarily left open for future determination the question whether a redemption had been effected. (*Perry* v. *West Coast Bond etc. Co.,* 136 Cal.App. 557, 559 [29 P.2d 279].)

The use of a judgment seemingly final, which yet permits of its own defeasance by subsequent action, has been recognized, even though a declaredly interlocutory judgment may have been more frequently used in cases which otherwise resemble the present one.

It is true also that in such a situation as that in the instant case, an independent suit in equity is a usual and permissible procedure. Nevertheless, the trial court in the present case had the right and power to pass upon the question whether the condition of its decree had been met and to apply equitable principles in making that determination.

From the following considerations, the trial court should have found that Upchurch had exercised his right of redemption and that the contract was reinstated:

The stipulation of the parties was made on May 5, 1970, and the amount to be paid Stanville should have been calculated as of that date; when the amount was calculated it included the amount of the payment that would become due on May 20 ($170), as appears from the letter of May 14, 1970 written by Stanville's counsel.

That letter stated an assumption Upchurch would make the payment of $170 due on June 20, 1970; that payment was made and accepted and its acceptance recognized the contract was still in force.

It might be inferred Stanville received from Carter rent that became due on May 9 and June 9. In equity, those amounts should have been credited against the amount necessary to redeem.

We do not attempt to say Code of Civil Procedure section 707 applies in the case of foreclosure of a contract purchaser's rights. It does however give a guide to the equitable principle to be applied, in its provision that: "[W]hen any rents or profits have been received by the judgment creditor or purchaser, or his or their assigns, from the property thus sold preceding such redemption, the amounts of such rents and profits shall be a credit upon the redemption money to be paid."

This court said in *Christensen* v. *Forst,* 153 Cal.App.2d 465, 472 [314 P.2d 746]: "The provision which immediately follows, that any rents thus received shall be credited upon the redemption money to be paid, with the further provision for an accounting, rather clearly indicates an intention to provide that the purchaser may retain the rents he is entitled to receive only so far as they are used to reduce the amount that must be paid to redeem the property from the sale."

In *MacFadden* v. *Walker,* 5 Cal.3d 809, 816 [97 Cal.Rptr. 537, 488 P.2d 1353], the Supreme Court has recognized the applicability of principles governing security foreclosures to installment land sales contracts.

The facts presented to the court should have impelled it either to find that the redemption had been effected and to direct a second tender of the sum of $1,347.20 which had been tendered by leaving the cashier's check on July 15, 1970, at Stanville's office; or to order that within a further reasonable time to be fixed, that amount, plus payments on the contract accrued since June 20, 1970, less, however, the total of any rents collected by Stanville after May 5, 1970, be paid to the latter.

The order appealed from is reversed with instructions to the trial court to proceed in accordance with the views expressed herein.

Ault, J., and Coughlin, J.,* concurred.

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.